818 P.2d 146

EGAN-RYAN MECHANICAL COMPANY, an Arizona corporation, Plaintiff/Counterdefendant/Appellee/Cross–Appellant,

v.

CARDON MEADOWS DEVELOPMENT CORPORATION, an Arizona corporation, Defendant/Counterclaimant/Appellant/Cross–Appellee,

and

Aetna Casualty and Surety Company, a Connecticut corporation, Defendant/Cross–Appellee.

Nos. 1 CA–CV 88–143, 1 CA–CV 88–427, 1 CA–CV 88–428 and 1 CA–CV 88–539.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 20, 1990.

Reconsideration Denied April 4, 1991.

Petition and Cross–Petition for Review Denied Oct. 22, 1991.

judgments on portions of the complaint and counterclaim, certifying its rulings as final, appealable judgments pursuant to Rule 54(b), Arizona Rules of Civil Procedure. Appellant Cardon Meadows Development Corporation (Cardon Meadows) challenges the trial court's substantive rulings and its Rule 54(b) certification of the judgment on the complaint. Cross-appellant Egan–Ryan Mechanical Company (Egan–Ryan) challenges this court's jurisdiction to review the judgment entered upon the counterclaim.

## FACTUAL OVERVIEW

Cardon Meadows is the owner and developer of eight commercial complexes located throughout the Phoenix metropolitan area. The complexes consist of one or more buildings, each building containing several commercial tenant suites. The complexes were constructed in multiple stages. First, shell buildings were erected. When each shell was completed, the municipality that issued the building permit issued a certificate of occupancy or equivalent certification of completion. Improvements to tenant suites were built as each separate suite was leased. As each tenant suite was completed, a separate certificate of occupancy or equivalent certificate of completion was issued. Improvement of many of the tenant suites occurred months or even years after the shell buildings were completed.

Egan–Ryan is a plumbing and heating/air conditioning contractor. Egan–Ryan and Cardon Meadows entered into a series of subcontracts under which Egan–Ryan installed the plumbing, heating, and air conditioning equipment for the shell buildings at these complexes. Eventually, Egan–Ryan also supplied the plumbing, heating, and air conditioning for many of the tenant suites. As construction of the various tenant suites got under way, Egan–Ryan and Cardon Meadows would agree on work to be performed and the price to be paid regarding each suite.

Cardon Meadows' payment to Egan–Ryan for the work that it was performing at the various complexes became seriously

Udall, Shumway, Blackhurst, Allen, Lyons & Davis, P.C. by Charles E. Maxwell, Mesa, for appellee/cross-appellant.

Beus, Gilbert, Wake & Morrill by Glenn B. Jenks, Phoenix, for appellant/cross-appellee.

Rake, Copple, Downey & Black by William J. Downey, Phoenix, for cross-appellee.

## OPINION

BROOKS, Judge.

This is a multiple-claim lawsuit between parties to a group of construction contracts. The trial court granted summary

in arrears. On September 16, 1986, Cardon Meadows' president wrote a letter to Egan–Ryan, stating that Cardon Meadows would pay Egan–Ryan at least $30,000 each week with the objective of having the balance, plus accruing interest, paid within 120 days. The letter indicated that steps were being taken to prevent any repeat of the current arrearage problem and requested Egan–Ryan's "continued cooperation." The record does not demonstrate that Egan–Ryan agreed to the payment plan. Cardon Meadows did make some of the payments referred to in its letter, but may have missed others. In the following weeks, other events caused the relations between the two companies to deteriorate completely. Cardon Meadows made no payments to Egan–Ryan after November 14, 1986. In December, Egan–Ryan began filing labor and materialmen's liens on Cardon Meadows' properties, recording a total of approximately seventy-seven liens covering each separate phase of the work performed at the eight complexes.

## PROCEDURAL HISTORY OF THE LITIGATION

On December 22, 1986, Egan–Ryan commenced this litigation by filing a five-count complaint to recover more than $450,000 for labor and materials supplied to Cardon Meadows. In counts I through IV of the complaint, respectively, Egan–Ryan sought recovery under the alternate theories of contract, open account, account stated, and quantum meruit. In count V, it requested foreclosure of its labor and materialmen's liens.

Cardon Meadows filed a four-count amended counterclaim for damages against Egan–Ryan, charging it with (I) interference with contractual relations, (II) recording false liens in violation of A.R.S. section 33–420, (III) breach of contract by performing defectively and failing to perform warranty work, and (IV) commonlaw slander of title in filing false liens.

Egan–Ryan first sought a partial summary judgment regarding its entitlement to money damages. The motion did not address any of Cardon Meadows' counterclaims or Egan–Ryan's lien foreclosure rights. Based upon the evidence presented, the trial court found that Egan–Ryan was entitled to judgment on count I of its complaint in the amount of $449,235.05.[1] The trial court entered a written judgment for that amount on August 7, 1987, but declined to include Rule 54(b) language, which would have made the judgment final and appealable.

Next, Egan–Ryan moved for partial summary judgment regarding Cardon Meadows' false lien claims. Again, the trial court found in Egan–Ryan's favor, ruling by minute entry that no material issues of fact existed and that Egan–Ryan was entitled to judgment as a matter of law on counts II and IV of Cardon Meadows' counterclaim.

The following day, Egan–Ryan requested Rule 54(b) certification of the judgment on count I of the complaint. Stating that Cardon Meadows' earlier opposition to Rule 54(b) language had been based upon its alleged entitlement to large offsets under its false lien claims, Egan–Ryan reasoned that because it had since obtained summary judgment on these counts, Rule 54(b) certification was now appropriate. Cardon Meadows opposed the request, urging that the judgment should not be made final while its other counterclaims remained unresolved. In the alternative, Cardon Meadows asked the trial court to set the amount of a supersedeas bond so that enforcement of the judgment could be stayed pending appeal.

On December 23, 1987, the trial court granted Egan–Ryan's request, entering a "second amended judgment on count I of complaint," which included Rule 54(b) language. The judgment awarded Egan–Ryan $449,235.05 plus interest and attorney's fees to be incurred in collecting the judgment. It further provided that "an evaluation of attorney's fees to be awarded

1. The trial court concluded that a material issue of fact existed as to whether Cardon Meadows owed Egan–Ryan for one invoice in the amount of $7,280.

Plaintiff hereunder will be made upon final resolution of this litigation."

On the same day, the trial court entered orders setting the amount of the supersedeas bond and staying the enforcement of the judgment for ten days so that the bond could be filed. The court determined that Egan–Ryan was entitled to $584,000 in security for the judgment, but ordered that because Cardon Meadows had previously filed statutory discharge of lien bonds (*see* A.R.S. § 33–1004) in the amount of $201,-651, the supersedeas bond could be furnished in the reduced amount of $382,350. The trial court later approved a bond in that amount submitted by Cardon Meadows and its surety, Aetna Casualty and Surety Company (Aetna). Egan–Ryan was permitted to amend its complaint to include Aetna as a defendant and to add a sixth count, for recovery against Aetna on the statutory discharge of lien bonds.

On January 7, 1988, Cardon Meadows filed a motion for new trial regarding the summary judgment rulings against it on count I of the complaint and counts II and IV of the counterclaim, arguing that the trial court's rulings were contrary to law and unsupported by the evidence. Cardon Meadows also objected to the inclusion of Rule 54(b) certification in the judgment on count I and to the award of future attorney's fees in an undetermined amount. By minute entry dated February 3, 1988, the trial court denied Cardon Meadows' motion for new trial.

On February 12, 1988, Cardon Meadows filed its first notice of appeal in this case, indicating that appeal was being taken from the judgment entered on December 23, 1987. In its opening brief, Cardon Meadows addressed not only the trial court's judgment on count I of the complaint but also its dismissal of counts II and IV of the counterclaim. This court subsequently granted Egan–Ryan's motion to dismiss the portion of the appeal relating to counts II and IV of the counterclaim because these rulings were not addressed

in the judgment to which the notice of appeal had been directed. We also struck the opening brief and directed counsel for Cardon Meadows to file a new opening brief addressing only the subject matter included in the trial court's formal judgment of December 23, 1987.

Pending this court's resolution of Egan–Ryan's motion to dismiss portions of the appeal, however, Cardon Meadows had filed a motion with the trial court, requesting that it either enter a judgment *nunc pro tunc* clarifying that the dismissals of counts II and IV of the counterclaim were intended to be part of the December 23 judgment or that it enter a separate Rule 54(b) judgment dismissing those counts. On June 30, 1988, the trial court signed and entered a "judgment *nunc pro tunc*," identical in substance to the December 23, 1987, judgment except that it added language granting Egan–Ryan judgment on counts II and IV of the counterclaim, dismissed these counterclaims, and explained that the earlier judgment had been intended to embrace these rulings.

Cardon Meadows filed its second notice of appeal in this case from the judgment entered on June 30, 1988. Later, apparently believing that this judgment had been lost, Cardon Meadows submitted a duplicate copy of the judgment, signed and entered on August 29, 1988. In an abundance of caution, Cardon Meadows filed a third notice of appeal from this duplicate judgment. This court consolidated Cardon Meadows' three appeals.

Meanwhile, on July 12, 1988, Egan–Ryan had filed a motion for new trial regarding the judgment *nunc pro tunc* and certain other rulings. The trial court denied Egan–Ryan's motion on August 31, 1988, and Egan–Ryan filed a cross-appeal from the duplicate judgment *nunc pro tunc* and the denial of its motion for new trial. Opened in this court as a separate appeal, Egan–Ryan's cross-appeal was consolidated with the three appeals filed by Cardon Meadows.[2]

---

**2.** Egan–Ryan also continued to pursue judgment on other portions of its complaint and on the counterclaim. On February 22, 1988, it moved

for partial summary judgment on counts I and III of the counterclaim (interference with contractual relations and breach of contract). On

**166**

## THE CROSS–APPEAL

Egan–Ryan argues that this court lacks jurisdiction over Cardon Meadows' appeal insofar as it pertains to dismissal of the false lien counts in the counterclaim.[3] Contending that the trial court was without jurisdiction to enter the judgment *nunc pro tunc* on June 30, 1988, Egan–Ryan urges that the only judgment that this court may review at this time is the judgment of December 23, 1987, which, as we have already determined, does not address the "false lien" claims.

■ Egan–Ryan has gone to great lengths in arguing that the trial court lacked jurisdiction to amend its order of December 23, 1987, and we agree with many of its arguments. We agree that once a judgment has been entered, it may be corrected, if irregular or erroneous, only by some proper proceeding for that purpose. *See Harold Laz Advertising Co. v. Dumes,* 2 Ariz.App. 236, 407 P.2d 777 (1965). We also agree that Cardon Meadows' request for a judgment *nunc pro tunc,* filed on May 27, 1988, was untimely as a motion to alter or amend judgment pursuant to Rule 59(*l*), Arizona Rules of Civil Procedure. That rule requires that such a motion be filed "not later than 15 days after entry of judgment," and Rule 6(b) provides that the time for filing a Rule 59(*l*) motion may not be enlarged.

■ Furthermore, we agree that once the time for filing a Rule 59(*l*) motion had expired, Rule 60(a), which provides for the correction of "clerical mistakes" in judgments at any time, was the only remaining authority for altering the judgment. That rule, however, only authorizes the correction of "clerical" errors—to show what the court actually decided but did not correctly represent in the written judgment; it may not be used to correct "judicial errors"—to supply something that the court could have decided, but did not. *See Hatch v. Hatch,* 23 Ariz.App. 487, 534 P.2d 295 (1975), *vacated on other grounds,* 113 Ariz. 130, 547 P.2d 1044 (1976); *Rae v. Brunswick Tire Corp.,* 45 Ariz. 135, 40 P.2d 976 (1935). We agree that the absence of language in the December 23, 1987, judgment relating to counts II and IV of the counterclaim cannot be considered a "clerical error."

■ We therefore agree with Egan–Ryan that the trial court lacked jurisdiction to amend the judgment of December 23, 1987. This conclusion does not dispose of the issue, however. When the trial court entered its written judgment on June 30, 1988, it had not previously entered any formal judgment corresponding to its rulings on counts II and IV of the counterclaim. The appeal from the judgment of December 23, 1987, did not divest the trial court of jurisdiction to enter judgment on these counts; it could do so at any time. *See Castillo v. Industrial Comm'n,* 21 Ariz.App. 465, 520 P.2d 1142 (1974) (appeal from an intermediate or interlocutory order does not divest the trial court of jurisdiction to proceed on matters not involved in the appeal).

Therefore, even if the order entered on June 30, 1988, was ineffective as a *nunc pro tunc* order, it was nevertheless effec-

March 11, 1988, it moved for judgment on the pleadings on count VI of its complaint (recovery against the statutory discharge of lien bonds).

On April 13, 1988, the trial court granted Egan–Ryan's motion for summary judgment as to count I of the counterclaim, finding no material issue of fact, but ruled that the issues regarding count III could not be decided on summary judgment. As to count VI of the complaint, the trial court denied the motion for judgment on the pleadings, ruling that it was without jurisdiction to rule on this matter because of the pending appeal.

**3.** Egan–Ryan attempted to raise two other issues in its cross-appeal, one regarding the sufficiency of the supersedeas bond and the other regarding the trial court's denial of judgment on the pleadings on Egan–Ryan's claim for recovery against the statutory discharge of lien bonds. By orders entered on January 26, 1989, and February 23, 1989, we granted Cardon Meadows' motion to strike these arguments from the opening brief because (a) the trial court's denial of the motion for judgment on the pleadings was not an appealable order, and (b) any question regarding the sufficiency of the supersedeas bond should be brought to our attention by appropriate motion filed pursuant to Rule 7(c), Arizona Rules of Civil Appellate Procedure, rather than by addressing it in the appellate briefs. We have since considered and ruled on a series of motions regarding the supersedeas bond.

tive as a final judgment on counts II and IV of the counterclaim as of the date that it was made. *See, e.g., Mageary v. Hoyt,* 91 Ariz. 41, 44, 369 P.2d 662, 664 (1962). Cardon Meadows timely appealed from that judgment, and the appeal was consolidated with its previous appeal from the judgment of December 23, 1987. Our jurisdiction in this appeal therefore extends to the trial court's judgments on count I of the complaint and on counts II and IV of the counterclaim.

## THE APPEAL

A. *Did the trial court err in granting summary judgment for Egan–Ryan on Cardon Meadows' "false lien" claims?*

■ Cardon Meadows based its false lien claims on the contention that Egan–Ryan knew or should have known that many of its liens had not been timely filed. Arizona Revised Statutes section 33–981 allows a person who labors and supplies materials in the construction, alteration, or repair of any building, other structure, or improvement to impress a lien thereon for the work done and the materials furnished. Such a lien is valid, however, only if perfected within the time limits set forth in A.R.S. section 33–993. Although the Arizona lien statutes are liberally construed to effect their purpose of protecting laborers, the time limits of A.R.S. section 33–993 must be strictly followed. *James Weller, Inc. v. Hansen,* 21 Ariz.App. 217, 223, 517 P.2d 1110, 1116 (1973); *Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 431, 561 P.2d 750, 755 (App.1977).

■ Section 33–993(A) allows a lien claimant such as Egan–Ryan, who had a direct contractual relationship with the property owner, to record its notice and claim of lien within ninety days after "completion of a building, structure or improvement." Prior to its most recent amendment in 1989, subsection (B) defined "completion" as the earliest of the following events:

(1) Actual completion of the work.

(2) Occupation or use of the building, structure or improvement by the owner or his agent.

(3) Written acceptance by the owner or his agent of the building, structure or improvement.

(4) Final inspection and written acceptance by the governmental body which issued the building permit for the building, structure or improvement.

(5) Cessation of labor for a period of sixty consecutive days, except when such cessation of labor is due to a strike, shortage of materials or act of God.

In Cardon Meadows' view, each shell building and each tenant suite was a separate construction project. Cardon Meadows urges that under A.R.S. section 33–993(B)(4), the certificates of occupancy issued upon completion of each particular shell or tenant suite triggered the time period for recording materialmen's liens for work performed on that particular project, absent a showing that any of the other events listed in A.R.S. section 33–993(B) had occurred earlier. According to Cardon Meadows, most of Egan–Ryan's liens were not filed within ninety days after the issuance of certificates of occupancy for particular portions of the buildings for which the labor and materials had been supplied.

In its motion for summary judgment on the false lien claims, Egan–Ryan argued that, as a matter of law, its liens had been timely recorded. Egan–Ryan maintained that the subject of construction at each building site was the entire building or buildings—all shell structures *plus* all tenant suites. It further argued that the agreements relating to each tenant suite in a complex were so connected with the original subcontract to furnish labor and materials for shell buildings as to be treated as a single agreement.

Egan–Ryan demonstrated that at each of the eight construction sites, it had supplied materials and labor for at least one tenant suite within ninety days before filing the liens that related to the whole project. It argued that the time for filing the liens did not begin to run until the building at each

particular site was completed. Alternatively, Egan–Ryan argued that Cardon Meadows was estopped to object to any untimeliness in filing the liens.

The trial court found that no issue of material fact prevented entry of summary judgment and determined that:

> as a matter of law, [Egan–Ryan] is entitled to summary judgment on the basis of [its] legal argument ... that under the applicable statute, A.R.S. § 33–993, the 90–day period for filing the lien claims does not begin to run until the subject buildings are completed. Completion here did not occur prior to the filing of liens and the statutory 90–day period was met by [Egan–Ryan's] filing and [Egan–Ryan] is entitled to Partial Summary Judgment on Counts 2 and 4 and same is granted.

On appeal, Cardon Meadows argues that the trial court erred in its application of the law and that summary judgment regarding the false lien claims should be reversed and remanded for further proceedings. We agree.

Egan–Ryan's argument that it could wait until completion of each entire building or complex of buildings before filing any liens despite earlier issuances of certificates of occupancy for various portions of the buildings rests primarily on two Arizona cases, *Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 561 P.2d 750 (App.1977), and *Gene McVety, Inc. v. Don Grady Homes, Inc.*, 119 Ariz. 482, 581 P.2d 1132 (1978). These cases addressed the meaning of "actual completion of the work" in an earlier version of section 33–993. Subsequent changes in the statute, however, and our own decision in *Union Rock & Materials Corp. v. Scottsdale Conference Center*, 139 Ariz. 268, 678 P.2d 453 (App.1983), require that liens pertaining to each phase of the construction be filed within ninety days after issuance of the relevant certificates of occupancy.

When *Lewis* and *McVety* were decided, "completion" was defined in section 33–993 only as "actual completion of the work" and "cessation of labor." In 1979, the legislature added three more indicia of completion and indicated that completion takes place upon the occurrence of the earliest of the five events listed in the statute. *See* Laws 1979, ch. 202, § 3.

In *Union Rock*, a subcontractor failed to file its lien within the statutory period after the owner had first occupied a section of the resort hotel under construction. The subcontractor argued that the owner's occupation of only a portion of the project was not sufficient to bring subsection (B)(2) of the statute into play.[4] We rejected that argument, observing that the 1979 amendment "clearly shows that the legislature intended to substantially restrict the time period for filing a valid mechanics' or materialmen's lien." 139 Ariz. at 271, 678 P.2d at 456. We also recognized that "[t]he amended version of A.R.S. § 33–993, in effect, emasculates that part of the supreme court's opinion in *Gene McVety, Inc.*, relying on the prior definition of 'completion.'" *Id.*

We went on to hold that partial occupation and use is sufficient to constitute completion under subsection (B)(2). To have held otherwise would have rendered that subsection superfluous, because occupation and use of the entire project would necessarily be synonymous with "actual completion".

We find it equally clear that the legislature intended that the issuance of the relevant governmental authority's certificate of occupancy constitute completion of that particular portion of the project. Thus, absent earlier occurrence of any of the events listed in subsection (B), the time for filing liens for labor and materials on such a portion begins to run when an appropriate certificate of occupancy is issued. Were we to conclude otherwise, we would

---

**4.** Under the 1979 amendments to the statute, subsection (B)(2) applied to both commercial and residential construction. The subsection was again amended in 1989 and now states that occupation or use signals completion only for residential contracting. *See* Laws 1989, ch. 208, § 2.

have to ignore subsection (B)(4) of the statute.

■ Before leaving this matter, we must address Egan–Ryan's additional argument that Cardon Meadows is estopped from asserting that the time for filing liens has run. Egan–Ryan contends that Cardon Meadows made promises about paying Egan–Ryan, causing it to forbear from filing its liens.

Cardon Meadows denies that its promises to pay had any bearing upon Egan–Ryan's decision not to timely file its liens. At the very least, Cardon Meadows has shown that issues of fact exist concerning the connection between Cardon Meadows' promises and Egan–Ryan's failure to timely file its liens. Moreover, questions of reliance aside, we are persuaded that Egan–Ryan cannot invoke the doctrine of promissory estoppel to excuse the late filing of its liens.

Egan–Ryan's argument is based primarily upon *Glitsos v. Kadish*, 4 Ariz.App. 134, 418 P.2d 129 (1966). In that case, a property owner promised to pay a materialman, with whom he had not directly contracted, for supplies furnished towards the improvement of the property. In reliance upon that promise, the materialman (Kadish) refrained from suing to foreclose his properly perfected lien rights, allowing the six-month foreclosure period to expire. The property owner then refused to pay and contended that Kadish, having failed to foreclose his lien, was without a remedy. On appeal from a judgment in favor of Kadish, this court affirmed, applying the doctrine of promissory estoppel to prevent the property owner from escaping liability. We stated: "to allow appellants to avoid this debt after inducing Kadish to forbear in foreclosing his lien would result in an apparent and manifest injustice to Kadish and the trial court was clearly correct in enforcing appellant's promise to pay." *Id.* at 136, 418 P.2d at 131. We note, however, that the relief that Kadish obtained was a judgment against the property owner based upon his promise to pay. Kadish was not permitted to foreclose his liens.

The doctrine of promissory estoppel, like traditional contract doctrines, is based upon the enforcement of a promise. *Kersten v. Continental Bank*, 129 Ariz. 44, 47, 628 P.2d 592, 595 (App.1981). This is not a case in which Egan–Ryan claims to have relied upon Cardon Meadows' promise to extend the time for filing liens. If it were, Cardon Meadows might well be estopped to deny that the liens were timely filed. Instead, the promises upon which Egan–Ryan claims to have relied were promises to pay the amounts due. If the doctrine had any application at all, it would be to enforce those promises to pay over Cardon Meadows' denial of consideration. Such an application was necessary in *Kadish* because no contract existed between the materialman and the owner. It is unnecessary here.

We conclude that the trial court erred in awarding summary judgment to Egan–Ryan on counts II and IV of Cardon Meadows' counterclaim. Upon remand, the trial court will need to consider the circumstances surrounding each lien to determine whether it was timely filed and then to consider whether, and in what amount, Cardon Meadows may be entitled to relief on its false lien claims.

**B.** *Did the trial court err in entering summary judgment for Egan–Ryan on its claim for nonpayment?*

■ Cardon Meadows urges that approximately $18,000 in disputed invoices should have been excluded from the judgment on Egan–Ryan's claim for nonpayment. Furthermore, Cardon Meadows asserts that evidence regarding defective construction and repudiation of warranties supported an affirmative defense that should have precluded summary judgment altogether.

Egan–Ryan moved for summary judgment on its contract claim on the grounds that it had billed Cardon Meadows on an on-going basis and that Cardon Meadows had never objected to the billings or denied its indebtedness, which amounted, at the time of trial, to $456,515.05. Egan–Ryan pointed out that even in answering the complaint, Cardon Meadows had admitted

an indebtedness, indicating only that it was without knowledge concerning the amount of the debt. Because Cardon Meadows acknowledged liability and had never contested any of the amounts owed, Egan–Ryan urged the trial court to enter judgment in the full amount of the aged trial balance.

When Cardon Meadows filed its response to the motion for summary judgment, it also requested leave to file an amended counterclaim. The trial court granted this request, permitting Cardon Meadows to add the two false lien claims and a claim for breach of contract to its previously asserted claim for interference with contractual relations.

In responding to Egan–Ryan's motion for summary judgment, Cardon Meadows submitted an affidavit from its president, James E. Meadows, to support its allegations that Egan–Ryan had breached some of the contracts by performing faulty work and by failing to perform warranty work. The affidavit incorporated a list of invoices, totalling $18,126.37, which Meadows claimed were in dispute. Cardon Meadows admitted that the dispute over the contract balance was limited to that amount, but urged the trial court to deny the motion for summary judgment, asserting that its counterclaims might be substantial, perhaps even exceeding the amount due under the contract. Alternatively, it asked the court to make a non-final determination, pursuant to Rule 56(d), that the undisputed amount of the accounting was $438,388.68, subject to Cardon Meadows' set-offs and counterclaims.

The trial court found that no legitimate dispute existed over Egan–Ryan's accounting, except for one invoice in the amount of $7,280. It concluded that the undisputed balance was $449,235.05 and entered judgment for that amount. In so ruling, the trial court viewed Cardon Meadows' allegations of breach by Egan–Ryan as relating

solely to Cardon Meadows' counterclaim and not as defenses to Egan–Ryan's claim for payment. Consequently, when Egan–Ryan later moved for summary judgment on the breach of contract count of the counterclaim, the trial court rejected the argument that the contract issues had already been resolved in Egan–Ryan's favor.

■ On appeal, Cardon Meadows argues that, at the very least, the summary judgment on Egan–Ryan's contract claim should have excluded all of the approximately $18,000 in disputed invoices rather than only the one for $7,280. We note, however, that Egan–Ryan urged the trial court to strike the Meadows affidavit, claiming that it was based upon hearsay, unsupported allegations, and misstatements of fact. Egan–Ryan admitted that the invoice for $7,280 might be subject to dispute, but maintained that the affidavit was insufficient to establish an issue of fact concerning the remaining invoices. We agree. The allegations in the Meadows affidavit were addressed primarily to Cardon Meadows' counterclaim. With respect to Egan–Ryan's accounting, however, except for the one invoice for $7,280, the affidavit contained no more than bare allegations of dispute. Although the trial court refused to strike the affidavit, it was justified in finding as a matter of law that the remaining invoices were properly included in Egan–Ryan's aged trial balance.[5]

Cardon Meadows also argues that the trial court erred in failing to treat its contention that Egan–Ryan had breached some of the contracts as a "recoupment defense" to the contract claim and in failing to find that fact issues concerning this defense precluded the entry of summary judgment. We disagree.

In *W.J. Kroeger Co. v. Travelers Indem. Co.*, 112 Ariz. 285, 541 P.2d 385 (1975), the Arizona Supreme Court discussed the distinction between a counterclaim or set-off

---

5. We reject Cardon Meadows' argument that the sufficiency of the Meadows affidavit is not properly before us because Egan–Ryan failed to cross-appeal from the trial court's denial of its motion to strike the affidavit. Egan–Ryan's challenge to the affidavit is offered solely in support of the trial court's judgment, it was

presented and considered in the trial court, and it does not result in the enlargement of Egan–Ryan's rights or a lessening of Cardon Meadows' rights on appeal; thus no cross-appeal was necessary. *See Bowman v. Board of Regents,* 162 Ariz. 551, 785 P.2d 71 (App.1989).

on the one hand and recoupment on the other. A counterclaim or set-off is a cause of action upon which a defendant might have brought a separate action against the plaintiff and recovered a judgment; recoupment is an equitable doctrine that can be used to reduce or to eliminate a judgment, but cannot be used for purposes of affirmative relief. 112 Ariz. at 288, 541 P.2d at 388.

Travelers had sued its insured, Kroeger, for past-due premiums. Kroeger filed a counterclaim, alleging that Travelers had refused to pay a valid claim. The trial court granted Travelers' motion for summary judgment on the counterclaim, finding it to be barred by the statute of limitations. On appeal, the supreme court vacated the judgment and remanded, directing the trial court to consider Kroeger's claim to relief under the equitable doctrine of recoupment.

In the case before us, Cardon Meadows' allegation that Egan–Ryan had breached the contract was properly designated a counterclaim because it could have been maintained as a separate action. No one has suggested that the counterclaim was time-barred or offered any other reason to believe that a just result may be achieved only through the application of equitable principles. We find no error in the trial court's failure to treat Cardon Meadows' counterclaim as a recoupment defense.

C. *Did the trial court err in including Rule 54(b) language in the judgment on Egan–Ryan's contract claim?*

█ Cardon Meadows next asserts that its unresolved counterclaim for breach of contract arose out of the same transaction as Egan–Ryan's request for payment and maintains that Rule 54(b) certification was improper because the judgment did not dispose of an entire claim. Again, we disagree.

Inclusion of Rule 54(b) language does not make a ruling final and appealable if the judgment does not dispose of an entire claim. *See, e.g., Marshall v. Williams,* 128 Ariz. 511, 627 P.2d 242 (App.1981). A claim that is legitimately termed a counterclaim, however, may be considered a separate claim for purposes of Rule 54(b) even though it arises out of the same transaction as plaintiff's claim. *Cold Metal Process Co. v. United Eng'g & Foundry Co.,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956). As the Arizona Supreme Court has observed:

[T]he United States Supreme Court has repudiated the notion that a separate claim for purposes of Rule 54(b) is one that must be entirely distinct from all the other claims in the action and must arise from a different occurrence or transaction. Rather, a claim is separable from others remaining to be adjudicated when the nature of the claim already determined is "such that no appellate court would have to decide the same issues more than once even if there are subsequent appeals."

*Continental Casualty Co. v. Superior Court,* 130 Ariz. 189, 191, 635 P.2d 174, 176 (1981) (quoting *Curtis–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)) (other citations omitted). As we have already determined, Cardon Meadows' claim for breach of contract was properly designated a "counterclaim." We are satisfied that the judgment on Egan–Ryan's contract claim disposed of an entire claim for purposes of Rule 54(b).

█ Nevertheless, it is possible for a trial court to abuse its discretion by certifying a judgment as final pursuant to Rule 54(b). *See Pulaski v. Perkins,* 127 Ariz. 216, 218, 619 P.2d 488, 490 (App.1980); *Watson Constr. Co. v. Amfac Mortgage Corp.,* 124 Ariz. 570, 573, 606 P.2d 421, 424 (App.1979). The trial court must consider competing factors in determining whether Rule 54(b) language is appropriate.

Rule 54(b) is designed to make an accommodation between the policy against piecemeal appeals and the problems that have arisen under the liberalized joinder of claims, counterclaims, cross-claims, and third-party claims in one suit permitted by our rules of procedure.

*Stevens v. Mehagian's Home Furnishings, Inc.,* 90 Ariz. 42, 44, 365 P.2d 208, 209 (1961) (citations omitted).

In this case, the trial court refused to include Rule 54(b) language in the judgment when it was originally entered. Only

after resolution of those counterclaims that might have resulted in significant off-sets for Cardon Meadows did the trial court find that no just reason for delay existed and expressly direct the entry of judgment. We find no abuse of discretion. Our reversal of the judgment on Cardon Meadows' false lien claims does not affect this conclusion.

D. *Did the trial court err in awarding attorney's fees to Egan–Ryan in an amount to be determined upon final resolution of the litigation?*

 The judgment of December 23, 1987, contains the following language concerning an attorney's fees award for Egan–Ryan:

> It is further ordered that an evaluation of attorney's fees to be awarded Plaintiff hereunder will be made upon final resolution of this litigation.

Cardon Meadows argues that it was reversible error for the trial court to award attorney's fees in an unspecified amount. Cardon Meadows also complains that it suffers prejudice in making its argument on appeal without knowing the amount of the award. We disagree.

Our supreme court has held that when it is within the trial court's discretion to award attorney's fees to the prevailing party in an action arising out of a contract, the award is inextricably tied to the granting of a motion for summary judgment on the substantive claim. *See Title Ins. Co. of Minnesota v. Acumen Trading Co.*, 121 Ariz. 525, 591 P.2d 1302 (1979). Such an award must be made at the time formal judgment is entered on the claim to which the award is tied or in response to a timely motion for a new trial or to amend judgment. *Id.*

In this case, the trial court's order implicitly awards attorney's fees to Egan–Ryan. The order further indicates that determination of the amount of the award will await final resolution of the entire case, presumably because the trial court preferred to award a net sum for attorney's fees rather than a number of separate amounts.

We believe that the trial court sufficiently complied with the requirements of *Acumen Trading Co.* by indicating that Egan–Ryan, as the successful party, is to recover its attorney's fees. Determination of the amounts to be awarded must be based upon the trial court's evaluation of an appropriate affidavit setting forth counsel's hours and rate of compensation. The trial court's decision to undertake such an evaluation only once creates no error.

Furthermore, the indeterminate nature of the award is not prejudicial to Cardon Meadows. The specific amount is irrelevant to arguments over whether A.R.S. section 12–341.01 is applicable to the claim, whether Egan–Ryan was the successful party, or whether the trial court, in its discretion, should have declined to award any fees at all. Should Cardon Meadows object to the amount of fees eventually awarded, it will be able to appeal on that basis from the judgment entered upon the award.

## CONCLUSION

The judgment in favor of Egan–Ryan on counts II and IV of the counterclaim is reversed, and the matter is remanded to the trial court for proceedings consistent with this opinion. The judgment in favor of Egan–Ryan on its contract claim is affirmed, as is the trial court's determination that Egan–Ryan was the successful party in the litigation of that claim.

Both parties have requested an award of attorney's fees on appeal. In the exercise of our discretion under A.R.S. section 12–341.01(A), we grant Egan–Ryan's request for fees incurred in defending the portion of the appeal that pertained to its contract claim. All other requests are denied.[6]

Affirmed in part, reversed in part, and remanded.

JACOBSON, P.J., and GERBER, J., concur.

---

**6.** Should Cardon Meadows ultimately prevail on its statutory false lien claim, it will be entitled to recover some portion of its attorney's fees under A.R.S. section 33–420.