219 P.3d 264

**Maria A. MINJARES, a single woman, Plaintiff–Appellant,**

v.

**STATE of Arizona, Defendant–Appellee.**

No. 1 CA–CV 08–0713.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 29, 2009.

**56**

Terry Goddard, Attorney General and Fred M. Zeder, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Terry H. Pillinger, P.C. by Terry H. Pillinger and Richard A. Cruz, P.C., by Richard A. Cruz, Phoenix, Attorneys for Appellant.

## OPINION

WEISBERG, Judge.

¶1 Maria A. Minjares brought a tort action against the State of Arizona, the City of Kingman, and others. After the jury found in Minjares' favor, the State unsuccessfully appealed from the superior court's judgment dismissing Kingman from the action. Following that appeal and at the State's request, the superior court corrected its previously entered judgment in Minjares' favor by reducing the interest rate payable during the pendency of the appeal. Minjares now appeals from that corrected judgment and asserts that the interest rate could not be altered once this court had issued its appellate decision. She also contends that Arizona Revised Statutes ("A.R.S.") section 41–622(F) (2004),[1] which the State argues requires this judgment to accrue interest at a reduced rate during the pendency of the appeal, does not apply under these circumstances. However,

for reasons that follow, we affirm the superior court's order.

### BACKGROUND

¶2 In July 2003, Minjares was severely injured in a collision with another vehicle at an intersection in Kingman, Arizona. Because the State maintained control of that intersection, Minjares filed suit against the State as well as against Mohave County, Kingman, and the driver of the other vehicle. Mohave County was dismissed from the action before trial began. During trial, the superior court both granted Kingman's motion for judgment as a matter of law because Kingman had not exercised control over the intersection and dismissed the action against the City with prejudice. Also during trial, the defendant driver and Minjares settled their dispute. The jury's verdict, filed on September 11, 2006, found the State thirty-three percent at fault for the accident and found Minjares' damages to be $3.1 million. On October 19, 2006, the court entered a signed judgment ordering the State to pay Minjares $1,023,000.00 "with interest at the rate of 10% from September 11, 2006[per] annum until this judgment is paid in full together with taxable costs."

¶3 On November 11, 2006, the State filed a notice of appeal to challenge the judgment in favor of Kingman but did not raise any issue related to the interest rate portion of the judgment. This court affirmed the judgment in Kingman's favor on February 14, 2008 and issued our mandate on April 21, 2008.

¶4 On April 15, 2008, shortly before issuance of our mandate, and again shortly afterward, the State filed motions asking the superior court to correct the judgment. It asked the court to specify that the ten percent interest rate applied from the date judgment had been entered until the date on which the State had filed its notice of appeal and commenced again after remand from the Court of Appeals.[2] But, it asserted that

---

1. A.R.S. § 41–622(F) reads in part: "Interest on any judgment against this state paid for out of the risk management revolving fund shall accrue at the average yield offered by United States treasury bills during the course of the appeal and shall be paid in accordance with this section. If the appeal is lost by this state, the judgment

amount plus interest at the rate prescribed in this subsection shall be paid."

2. Although Minjares has challenged application of § 41–622(F) to her judgment, she has not challenged the dates asserted by the State and

during the pendency of the appeal, A.R.S. § 41–622(F) required that the interest rate be reduced to the average yield offered by United States treasury bills. The State cited Arizona Rule of Civil Procedure ("Rule") 60(a) and (b) as authority to correct an erroneous judgment. It also noted two errors in the signed judgment: one awarding interest from the date of the jury's verdict instead of from the date of entry of the judgment, and a second awarding interest at ten percent even after the State filed its notice of appeal.

¶ 5 In response, Minjares argued that the court lacked authority to alter the judgment following the mandate of this court. She also contended that the State had waived any error by failing to object to or to challenge the form of judgment and by failing to raise the issue in the appeal. In addition, Minjares asserted that A.R.S. § 41–622(F) was an accounting statute that merely set the interest rate a borrowing government department paid to reimburse the risk management fund when the fund has been exhausted, but that it did not exempt the State from the usual interest rate provided by A.R.S. § 44–1201(A). Finally, Minjares contended that Rule 60(c)(1) was the proper basis for the State's motion, rather than Rule 60(a),(b)(2), or (c)(6), but that more than six months had elapsed, thus eliminating the possibility of Rule 60(c)(1) relief.

¶ 6 While the State's motions were pending, on May 8, 2008, Minjares accepted the State's principal payment of $1,047;132.12, which included her costs but no interest on the judgment.

¶ 7 In ruling on the motions, the superior court rejected Minjares' waiver argument because when it had entered judgment, no one knew whether the State would appeal or how long an appeal might take, and yet until the court signed the judgment, the State could not appeal at all. The court also reasoned that although the State had not raised the issue in its appeal, no one knew when the appellate court mandate would issue, and in any event, the mandate would not specify an interest rate. Thus, the court concluded that

§ 41–622(F) required the procedure the State had utilized to correct the judgment.

¶ 8 The court also observed that until 1993, A.R.S. § 41–622(F) had provided that if the funds in the risk management revolving fund were exhausted and the legislature was not in session, "any final judgment [would] accrue interest at the legal rate and ... be payable upon appropriation in the next succeeding [legislative] session." The statute assumed that any judgment would be paid immediately and would accrue interest only if the legislature were not in session, but it did not envision that the State might delay payment due to the filing of an appeal.

¶ 9 After revision in 1993, however, the statute deleted the words, "at the legal rate," and expressly anticipated delay in payment due to an appeal. Moreover, the House bill that revised the statute was entitled "State Government–Risk Management–Interest on Judgments." Thus, the interest rate applied to the "judgment amount" and not, as Minjares had suggested, to "borrowing to cover the judgment amount." In addition, neither version of the statute implied that the treasury bill-based interest rate was a rate that applied only to intergovernmental transfers. Thus, the treasury bill-based rate of interest was to be paid to a successful plaintiff during the time a case was on appeal. Finally, because the statute did not specify otherwise, the court concluded that the regular statutory rate of ten percent applied before the filing of the notice of appeal and after the return of the appellate mandate.

¶ 10 The court entered a corrected judgment in August 2008 awarding ten percent interest from October 19, 2006 until November 11, 2006; 4.1495 percent interest from November 11, 2006 until April 21, 2008 when our mandate issued; and thereafter ten percent interest until paid.

¶ 11 Minjares timely appealed. She contends that *res judicata* and waiver prevented the superior court from altering the interest rate on a final judgment that this court has affirmed on appeal. She also asserts that A.R.S. § 41–622(F) does not apply to the

accepted by the superior court during which the reduced interest rate would apply if the statute

governs. Therefore for purposes of this appeal, we also accept those dates.

interest rate on a judgment in her favor when the State is the appealing party.

## DISCUSSION

### Impact of *Res Judicata*

■ ¶ 12 Whether *res judicata* applies in particular circumstances is a question of law that we review de novo. *See Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223, ¶ 8, 62 P.3d 966, 968 (App.2003); *Better Homes Constr., Inc. v. Goldwater*, 203 Ariz. 295, 298, ¶ 10, 53 P.3d 1139, 1142 (App.2002).

¶ 13 Minjares argues that once this court issued a mandate affirming the superior court judgment, the judgment became final and should have been regarded as binding or *res judicata* by the superior court. For support, she cites *Tovrea v. Superior Court*, 101 Ariz. 295, 297, 419 P.2d 79, 81 (1966). That case held that a trial court could not ignore the supreme court's mandate, which had awarded costs to the prevailing party, but was "absolutely bound by the decision and mandate." *Id.* Neither our appellate decision nor our mandate, however, addressed the question of the proper interest rate or specified a rate. Our decision merely affirmed dismissal of Kingman as a party, leaving the State as the only government entity liable to Minjares. Unlike the court in *Tovrea*, the superior court did not violate or contradict any specific directions in our mandate when it reduced the interest rate on the judgment for a specific time period.

■ ¶ 14 In contending that *res judicata* bars alteration of the judgment, Minjares does not indicate whether she is referring to either issue or claim preclusion. Issue preclusion prevents a party from relitigating an issue that was actually litigated in a prior proceeding if the parties had a full opportunity and motive to litigate it, resolution of the issue was essential to the decision, a final resolution on the merits resulted, and there is common identity of the parties. *Campbell*, 204 Ariz. at 223, ¶ 9, 62 P.3d at 968. The issue of the correct rate of interest on Minjares' judgment was never litigated in her suit against the various defendants, so we cannot agree that the State attempted to relitigate that issue when it sought to amend the judgment.

■ ¶ 15 Under the doctrine of claim preclusion, a final judgment binds the parties and their privies "when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties or their privities was, or *might have been determined in the former action.*" *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 7, 977 P.2d 776, 779 (1999) (emphasis added). However, for the reasons discussed in ¶¶ 18–19 below, there have been no *prior* proceedings between these parties that resulted in a final judgment and in which the issue of the proper application of A.R.S. § 41–622(F) either was or could have been litigated. Therefore, neither issue nor claim preclusion barred the superior court from considering the State's request for Rule 60 relief or deprived the court of the authority to act on the State's motion.

### Application of Waiver

¶ 16 Minjares additionally contends that the State waived the argument that it was entitled to a reduction in the interest rate by failing to raise that issue either before the superior court's entry of final judgment or in its appeal. She also asserts that she was left with a "false impression" that the judgment would accrue interest at ten percent during the appeal and that her misunderstanding caused unspecified prejudice during the appeal.

■ ¶ 17 Waiver generally requires a finding of intentional relinquishment of a known right or of conduct that would warrant such an inference. *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980). A claim of waiver based on conduct, i.e., the State's failure to challenge the interest rate stated in the judgment, must include evidence of acts inconsistent with the intent to assert a right. *Id.* "A clear showing of intent to waive is required for waiver of rights." *Goglia v. Bodnar*, 156 Ariz. 12, 19, 749 P.2d 921, 928 (App.1987). Waiver also generally is a question of fact, and in this case, the superior court's finding binds this court unless we conclude that the finding is clearly errone-

ous.[3] *Id.; see also Chaney Bldg. Co. v. Sunnyside Sch. Dist. No. 12*, 147 Ariz. 270, 273, 709 P.2d 904, 907 (App.1985); *Concannon v. Yewell*, 16 Ariz.App. 320, 321, 493 P.2d 122, 123 (1972).

¶ 18 The State concedes that at the moment the superior court entered judgment, A.R.S. § 44–1201(A) governed the judgment and set ten percent as the proper interest rate. It argues, however, that it could not have waived its right to a reduced amount of interest because that right did not come into existence until the State filed its notice of appeal. It also contends that when it filed the notice of appeal, the interest rate on the judgment merely became *potentially* subject to change because if the State had won the appeal, the judgment might have been vacated resulting in no interest. Moreover, the State asserts that although it lost the appeal, no one could calculate the precise interest rate to apply to the judgment during the appellate process until this court issued its mandate on a specific date. Thus, the State contends that it moved to correct the judgment "as soon as it was feasible to do so." The State finally notes that it could not have sought correction of the judgment as part of its appeal because that would have constituted an attempt to raise an issue not previously litigated in the trial court.

¶ 19 We do not decide whether, if we had been the fact finder, we would have found no waiver by the State. In this case, we cannot say that the superior court committed clear error in finding that the State had not knowingly and intentionally waived its right to request a reduced interest rate during the pendency of the appeal. Of course, the State was not even potentially entitled to a reduction until it filed the notice of appeal. And although the State might have been better

advised to have alerted Minjares and the trial court to the possibility that it would request correction of the judgment to reflect the treasury bill-based interest rate pursuant to A.R.S. § 41–622(F), Minjares cites no statute or rule that requires the State to provide advance notice of that possibility. Here, the State acted promptly after we issued our appellate decision by requesting a modified interest rate once the time period of the appeal had become finite and the rate could be calculated.

### The Superior Court's Authority to Grant Rule 60 Relief

¶ 20 Minjares additionally argues that Rule 60 does not allow the State to seek an amended judgment after an appeal has ended and the mandate has issued and thus that the superior court abused its discretion by granting relief. *See Birt v. Birt*, 208 Ariz. 546, 549, ¶ 9, 96 P.3d 544, 547 (App.2004) (we review denial of Rule 60(c) relief for abuse of discretion). Nevertheless, the State points out that our supreme court has approved the grant of post-judgment relief by a trial court even after that court had entered a judgment as directed by an appellate court mandate. *US W. Commc'ns v. Ariz. Dep't of Revenue*, 199 Ariz. 101, 104, ¶ 11, 14 P.3d 292, 295 (2000). *US West* overturned the prior rule that one seeking post-judgment relief under Rule 60 first had to obtain permission from the appellate court and a recall of the mandate. In *US West*, the plaintiff cited Rule 60(c)(1), (c)(2), and (c)(6) as grounds for its request. *Id.* at 102, ¶ 3, 14 P.3d at 293.

¶ 21 Here, the State initially relied upon Rule 60(a) (clerical mistakes in judgments arising from oversight or omission) and 60(b)(2) (correction of a mistake, miscalcula-

---

**3.** In a recent case dealing with notices of claim against a government entity, our supreme court found waiver as a matter of law "from the extensive litigation record." *City of Phoenix v. Fields*, 219 Ariz. 568, 575, ¶ 32, 201 P.3d 529, 536 (2009). In *Fields*, the court held that because "a government entity may entirely avoid litigating the merits of a claim with a successful notice of claim statute defense, waiver of that defense should be found", *id.* at ¶ 30, when that entity had actively litigated the merits for nearly five years before challenging the adequacy of the notices of claim. *Id.* at ¶¶ 30–31. Similarly, in

*Jones v. Cochise County*, 218 Ariz. 372, 380, ¶ 28, 187 P.3d 97, 105 (App.2008), we held that when facts showing waiver are undisputed, occurred during the litigation, and are unrelated to the facts of the claim, an appellate court may resolve waiver as a matter of law. In both cases, the plaintiffs faced total denial of relief after an extended time in which the defendant had not identified possible defects in the notices of claim. Minjares will not suffer complete deprivation of her judgment or of interest on it but only a reduction.

tion or misrecital of a sum of money). In its reply to its renewed motion for relief and to Minjares' argument that its motion was untimely, however, the State argued that the court could treat the motion as one brought under Rule 60(c)(6) and find extraordinary circumstances of hardship or injustice.

¶ 22 In light of *US West*, the superior court did not err in concluding that it had authority to consider the State's request for Rule 60 relief even after this court had reached a final decision and issued our mandate. As our supreme court recognized, trial courts are quite capable of resolving questions posed by Rule 60 motions. *Id.* at 104, ¶ 8, 14 P.3d at 295. Accordingly, the superior court did not lack authority to reconsider the previously signed judgment simply because this court had affirmed that judgment on grounds unrelated to the applicable interest rate.

¶ 23 Rule 60(a) allows the court to correct clerical mistakes arising from oversight or omission. When the court initially entered judgment, however, ten percent interest as stated in the judgment was not a mistake. The judgment became potentially incorrect, under the State's theory, when it filed the notice of appeal; the judgment actually became incorrect once the State lost the appeal and this court issued a mandate affirming the judgment, concluding the appellate process.

¶ 24 We have held that "[t]he power to correct clerical error does not extend to the changing of a judgment, order, or decree which was entered as the court intended." *Ace Automotive Prods., Inc. v. Van Duyne*, 156 Ariz. 140, 142–43, 750 P.2d 898, 900–01 (App.1987). In *Ace Automotive*, the trial court intended to enter judgment on a promissory note in an amount that the defendants later challenged as incorrect. On appeal, we held that the error "was not clerical but judgmental, and [that] defendants' failure to object at trial preclude[d] correction on appeal." *Id.* at 143, 750 P.2d at 901.

¶ 25 Similarly, we have held that Rule 60(a) "authorizes the correction of 'clerical'

errors—to show what the court actually decided but did not correctly represent in the written judgment; it may not be used to correct 'judicial errors'—to supply something that the court could have decided, but did not." *Egan–Ryan Mech. Co. v. Cardon Meadows Dev. Corp.*, 169 Ariz. 161, 166, 818 P.2d 146, 151 (App.1990). There, omission of language in a judgment disposing of two counts of a counterclaim was not a "clerical error," and thus the trial court could not amend its prior judgment. *Id.*

¶ 26 Here, the judgment specified that interest at the rate of ten percent would accrue from September 11, 2006 until paid in full. The State does not assert that the judgment failed to represent what the court actually decided or what the parties intended. The omission of a proviso that, if the State appealed, the interest rate would be modified to the average interest of treasury bills during the pendency of the appeal, was not a clerical error. Instead, after it lost the appeal, the State asked the superior court to reach a legal conclusion that A.R.S. § 41–622(F) applied to this case and required revision of the interest rate. This does not constitute correction of a clerical error and is not authorized by Rule 60(a).

¶ 27 Rule 60(b)(2) provides that if "there is a mistake, miscalculation or misrecital of a sum of money . . . and there is among the records of the action a verdict or instrument of writing whereby such judgment may be safely corrected, the court shall on application and after notice, correct the judgment accordingly." [4] The State has never alleged that among the records of this action was a pre-judgment writing that showed a basis for correcting the judgment. Thus, Rule 60(b)(2) does not allow the relief granted here.

¶ 28 Finally, we turn to Rule 60(c)(6) because we will affirm the superior court's ruling if it was correct for any reason. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 597, ¶ 27, 161 P.3d 1253, 1261 (App. 2007). Rule 60(c)(6) states, "[o]n motion and upon such terms as are just the court may

---

4. Minjares argued that Rule 60(b)(2) could not apply because there was no newly discovered evidence that could not have been discovered in time to move for a new trial. However, that ground is found in Rule 60(c)(2), not 60(b)(2).

relieve a party . . . from a final judgment . . . for . . . (6) any other reason justifying relief from the operation of judgment." To obtain such relief, the reason "must *not* be one of the reasons set forth in the five preceding clauses [of Rule 60(c) and] . . . the 'other reason' advanced must be one that justifies relief." *Webb v. Erickson*, 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982) (citations omitted). Furthermore, this Rule authorizes relief only when the interest in according finality of judgments is outweighed by "extraordinary circumstances of hardship or injustice." *Id.* at 187, 655 P.2d at 11. *See also Panzino v. City of Phoenix*, 196 Ariz. 442, 445, ¶ 6, 999 P.2d 198, 201 (2000).

¶ 29 We have observed that "the precise scope of Rule 60(c) relief defies neat encapsulation, . . . [but] is primarily intended to allow relief from judgments that, although perhaps legally faultless, are unjust because of extraordinary circumstances that cannot be remedied by legal review." *Tippit v. Lahr*, 132 Ariz. 406, 408–09, 646 P.2d 291, 293–94 (App.1982). Here, the judgment was correct when entered but became legally incorrect if, as the State asserted, the appeal caused the judgment to become subject to a different interest rate and required calculation based on the precise time period consumed by the appellate process.

¶ 30 Although not directly on point, *Birt* is instructive. There, a divorce decree equitably divided the parties' debts and assets. 208 Ariz. at 548, ¶ 2, 96 P.3d at 546. When the time for appeal had passed, the husband filed a petition in bankruptcy and obtained discharge of several debts incurred during the marriage and for which the wife also was responsible. *Id.* at ¶ 5. The wife then moved to set aside the decree because the discharge potentially would render her solely liable for the community debts. *Id.* at 549, ¶ 7, 96 P.3d at 547. We concluded that Rule 60(c)(6) authorized relief to rectify the resulting but unanticipated post-decree inequity. *Id.* at 556, ¶ 37, 96 P.3d at 554.

¶ 31 As in *Birt*, when the superior court entered judgment, the court and the parties apparently had not considered the possibility that subsequent events would significantly alter the propriety of that judgment. Yet, the husband in *Birt* had a right to file a petition in bankruptcy, and his success or failure in obtaining discharge could not be known until the bankruptcy court ruled on his petition. Likewise, the State had a right to appeal from this judgment, and its success or failure could not be known until we issued our ruling.

¶ 32 Therefore, we find no abuse of discretion in the superior court's grant of relief, although we conclude that Rule 60(c)(6) is the appropriate basis for its action. In doing so, we reject Minjares' contention that the State's motion was untimely. Rule 60(c)(6) requires only that a party file a motion within a "reasonable" time of discovery of a basis for relief. Once we filed our opinion and the mandate issued, the appeal ended and its duration became finite. The State moved to correct the judgment within two months of our decision and a week before issuance of the mandate. Its request was timely.

**The Statutory Scheme**

¶ 33 We now turn to the question of whether A.R.S. § 41–622(F) applies to this case. It is well established that when parties have not agreed otherwise, a statute may control the interest rate applied to a judgment resolving their dispute. *McBride v. Superior Court (Maricopa County)*, 130 Ariz. 193, 194, 635 P.2d 178, 179 (1981). Whether the legislature intended this statute to override § 44–1201(A), which generally governs interest on a final judgment, presents a question of law subject to de novo review. *See Jenkins v. Hale*, 218 Ariz. 561, 563, ¶ 10, 190 P.3d 175, 177 (2008) (statutory interpretation is a legal question).

¶ 34 Normally, we regard a statute's plain language as the best indicator of its intended meaning, and we attempt to give effect to that meaning. *Mathews ex rel. Mathews v. Life Care Ctrs. Of Am., Inc.*, 217 Ariz. 606, 608, ¶ 6, 177 P.3d 867, 869 (App. 2008) (citations omitted). If statutory language is unclear, we may consider not only "the statutory scheme as a whole . . . [but] its context, subject matter, historical background, effects and consequences, and spirit

and purpose." *Id.* We also may consider a title to aid in interpretation. *State v. Barnett,* 142 Ariz. 592, 597, 691 P.2d 683, 688 (1984).

¶ 35 In moving to correct the judgment, the State asserted that § 41–622(F) applied and that, because the judgment would be paid out of the risk management revolving fund, during the pendency of an appeal interest on such a judgment would accrue based on the average yield of United States' treasury bills. To better understand the interplay of the statutes at issue here, we consider each one in context.

¶ 36 Title 44 governs "Trade and Commerce," and chapter 9 is entitled "Trade Practices Generally." Article 1 is entitled "Miscellaneous Provisions Relating to Loans." The first statute, A.R.S. § 44–1201(A), states: "Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." The statute appears to have broad application but is silent regarding the impact of the appellate process on the stated interest rate.

¶ 37 Title 41 deals with State Government. Chapter 3.1 covers "Risk Management," and Article 1 of the chapter is entitled, "Insurance; Uninsured Losses." Section 41–621(A) (2004) relates to insurance, and subsections (1), (3), and (7) direct the department of administration ("DOA") to obtain insurance against loss on such things as state-owned buildings; departments, agencies, officers, agents, and employees; and the "[d]esign and construction of ... roads." Subsection E provides that DOA "shall provide for state self-insurance for losses arising out of state property, liability or workers' compensation claims prescribed by subsection A." Subsection M generally requires the Attorney General to defend the State and its departments, and subsection N allows "claim[s] for liability damages" to be settled

under various circumstances by the director of DOA, the attorney general, and the joint legislative budget committee.

¶ 38 Section 41–622 is entitled: "Risk management revolving fund; construction insurance fund; self-insured losses and administrative costs; budget requests." Subsection A mandates creation of these two funds "for the purchase of insurance, risk management services ..., [and] payment of self-insured losses pursuant to § 41–621, subsections A, B, C, D and E." Subsection D requires DOA annually to present "a budget request based on the actuarial needs for liability losses, workers' compensation liability losses, property losses and risk management administrative costs." It also mandates that the budget specify an amount to be charged to each entity and that each pay its proportionate share of the insurance/self-insurance costs.

¶ 39 Before 1993, Subsection F stated that if either of the revolving funds

> is projected to be exhausted while the legislature is in session, a special appropriation may be requested by the [DOA] for monies to meet the needs of the funds. If the funds are exhausted at a time when the legislature is not in session, any final judgment shall accrue interest *at the legal rate* and shall be payable upon appropriation in the next succeeding regular session of the legislature.

(Emphasis added.) *See* 1992 Ariz. Sess. Laws, Ch. 312 § 12 (2nd Reg. Sess). When the legislature amended this subsection, it deleted the words "at the legal rate" in the above statute and added the following:

> Interest on any judgment against this state paid for out of the risk management revolving fund shall accrue at the average yield offered by United States treasury bills during the course of the appeal and shall be paid in accordance with this section. If the appeal is lost by this state, the judgment amount plus interest at the rate prescribed in this subsection shall be paid.[5]

---

5. In contrast to § 41–622(F), A.R.S. § 41–622.01 (2004) creates a "permanent special risk revolving fund ... for ... administering joint insurance purchase, self-insurance, or pooled retention plans for contractors of this state prescribed by § 41–621, subsection C." It provides that "[i]f

the revolving fund is projected to be exhausted the board of trustees shall make a special assessment on all members ... to meet the needs of the fund. If the monies ... are exhausted a final claim settlement of judgment *shall accrue interest at the legal rate* and is payable on receipt of

See 1993 Ariz. Sess. Laws, Ch. 71, § 3 (1st Reg. Sess.).

¶ 40 Furthermore, the House bill summary stated:

> Currently, judgments against the state which are under appeal accrue interest at the legal rate of 10% until the case is resolved through the appeals process. HB 2106 instead requires that the interest rate on any judgment against the State accrue at the average yield offered by U.S. Treasury Bills during the period in which the judgment is under appeal.

(Bill Summary for H.B. 2106 for House Committees on Government Operations and Banking and Insurance, Feb. 17, 1993).

The Senate Fact Sheet stated in part:

> Currently, judgments under appeal by the state accrue interest at a rate of 10% until the case is resolved through the judicial process. H.B. 2106 changes this fixed interest rate to the average yield of U.S. Treasury Bills during the period in which the judgment is under appeal.

(Minutes of Senate Committee on Government, Fact Sheet for H.B. 2106, Mar. 18, 1993).

¶ 41 From the plain language of the statute and this history, the legislature clearly intended that when a judgment against the State would be paid from the risk management revolving fund, the normal statutory interest rate would not apply if there was an appeal; and in the event of an appeal, the legislature intended to substitute a new, treasury bill-based interest rate during the time encompassed by the appeal. The parties do not dispute that the judgment here was to be paid out of the risk management revolving fund. Accordingly, we uphold the superior court's interpretation of the statute and its conclusion that the statute applied to these circumstances and required correction of the judgment to provide for the treasury bill-based interest rate during the pendency of the appeal.[6]

¶ 42 In light of our interpretation of § 41–622(F), we are unpersuaded by Minjares' contention that the statute does not expressly exempt the State from the ten percent rate in A.R.S. § 44–1201 and thus that the two statutes conflict. If two statutes appear to conflict, and one is more recent and specific, it usually will override the more general statute. In re Estate of Winn, 214 Ariz. 149, 152, ¶ 16, 150 P.3d 236, 239 (2007). Section 44–1201, as revised in 1969, applies to all judgments unless the parties otherwise agree; § 41–622(F), as modified in 1993, specifies an interest rate during the pendency of an appeal only for judgments against the State that will be paid out of one of the revolving funds. It is both more recent and more specific than § 44–1201(A), and the legislature was aware of that statute when it revised § 41–622(F). Accordingly, § 41–622(F) controls.

¶ 43 Similarly, we reject Minjares' argument that § 41–622(F) simply specifies an interest rate the liable department owes when it repays the revolving fund.[7] This interpretation is neither supported by the statutory language that it applies to "any judgment" against the State paid out of the revolving fund nor is it supported by the relevant legislative history. Instead, the history reveals that the legislators were fully cognizant of the general ten percent rate and wished to "change[ ] this fixed interest rate to the average yield of U.S. Treasury Bills during the period in which the judgment is under appeal." Accordingly, A.R.S. § 41–622(F) governs the interest rate applicable

---

allocated income from members of the pool." § 41–622.01(C) (emphasis added).

6. Despite our conclusion, in the future when a judgment has been entered against the State and will be paid out of the risk management revolving fund, we strongly urge the parties to acknowledge in the judgment the possibility that A.R.S. § 41–622(F) may supplant the normal statutory interest rate during the pendency of an appeal. Had the State objected to the form of judgment on the ground that if it appealed and lost § 41–622(F) would apply, the superior court could have ruled upon the question. Then, either party could have challenged an unfavorable ruling and obtained a resolution by this court in the first appeal, obviating the expense and delay that has resulted from this second appeal.

7. Minjares also contends that A.R.S. § 41–622(D) provides guidance, but that subsection does not address the interest rate applicable to a judgment on appeal and is not relevant.

during the State's appeal from a judgment to be paid from the revolving fund.[8]

## CONCLUSION

¶ 44 For the foregoing reasons, we uphold the superior court's conclusion that it had authority to grant the State's request for a corrected judgment and the subsequent judgment awarding interest based on the average yield of United States Treasury bills during the pendency of the appeal.

CONCURRING: MARGARET H. DOWNIE, Judge.

NORRIS, Judge, dissenting in part, concurring in part.

¶ 45 With respect, I dissent from the majority's resolution of Minjares' waiver argument. In my view, the State waived any argument it was entitled to a reduction in the interest rate under A.R.S. § 41–622(F) because it failed to raise the applicability of that statute before the superior court entered final judgment in the first appeal. "Waiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment." *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co.,* 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980). Further, "waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right." *Id.* That evidence exists in this case.

¶ 46 Specifically, the State could have raised its right to a lower interest rate under the statute before judgment was entered. Presumably, the State was on notice of the statute before judgment was entered and, presumably, understood it would be entitled to the lower interest rate if it elected to appeal. The State, thus, could have raised and ensured its right to rely on the statute by objecting to the proposed form of judgment Minjares lodged with the court—36

days before it was entered by the court. It could have asked the court to include a provision in the judgment that, if the State appealed, the interest rate would be modified to accrue on the judgment at the average yield offered by United States treasury bills during the pendency of the appeal, and that upon issuance of the mandate, interest would accrue at the legal rate of 10% per annum. The inclusion of such a provision would have avoided this appeal and its attendant costs to the taxpayers of the State of Arizona.

¶ 47 Although waiver is generally viewed as a question of fact to be determined by the trier of fact, here the facts are uncontroverted. The State could have raised the interest issue before entry of judgment. Accordingly, because it failed to do so, I part company with the majority's conclusion the State did not waive its right to rely on A.R.S. § 41–622(F) as a matter of law.[9]

¶ 48 Waiver aside, I agree with the majority's construction of A.R.S. § 41–622(F).

---

8. Minjares argues for the first time in her reply brief that A.R.S. § 41–622(F) applies to a judgment entered against the State when the legislature is not in session. We decline to consider arguments first raised in a reply brief. *Romero v. Sw. Ambulance,* 211 Ariz. 200, 204 n. 3, ¶ 7, 119 P.3d 467, 471 n. 3 (App.2005).

9. Because I believe the State waived its right to rely on this statute, I do not need to address Minjares' other arguments.