177 P.3d 867

**Herman MATHEWS, by and through his Guardian and Conservator, Vyntrice MATHEWS, Plaintiff/Appellee,**

v.

**LIFE CARE CENTERS OF AMERICA, INC., a Tennessee corporation dba Life Care Center of Paradise Valley; Mary Anne Stanford, Administrator, Defendants/Appellants.**

No. 1 CA–CV 07–0228.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 21, 2008.

Review Denied June 3, 2008.

Wilkes & McHugh, PA By Melanie Bossie, Brad H. Astrowsky, Phoenix, Attorneys for Plaintiff/Appellee.

Gordon & Rees, LLP By Linda Hunt Mullany, Matthew G. Kleiner, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

IRVINE, Judge.

¶ 1 Life Care Centers of America dba Life Care Center of Paradise Valley and Mary Anne Stanford, Administrator, (collectively "LCCA") appeal from the trial court's order denying its motion to compel arbitration with Herman Mathews, by and through his Guardian and Conservator, Vyntrice Mathews (collectively "Mathews"). LCCA argues that Mathews signed a Voluntary Agreement for Arbitration ("Agreement"), which required Mathews to participate in binding arbitration of all disputes with LCCA. LCCA argues that the trial court erred in denying

1. We cite the current version of APSA because no revisions material to this decision have occurred.

2. The record is silent on whether the trial court found Herman was a vulnerable or incapacitated

its motion to compel arbitration because the Agreement does not take away rights and remedies available under the Arizona Adult Protective Services Act ("APSA"), Arizona Revised Statutes ("A.R.S.") sections 46–451 to –459 (2005 & Supp.2007),[1] specifically § 46–455(O). The issues properly before us are whether (1) APSA prevents the enforcement of a voluntary arbitration agreement entered into by an elderly person or an elderly person's authorized representative and (2) the trial court properly ruled that the term in the Agreement requiring a panel of arbitrators selected from the American Arbitration Association ("AAA") was not a compelling reason to void the Agreement because substitute arbitrators could be found. We do not read the plain language of A.R.S. § 46–455(O) so broadly as to prevent enforcement of a voluntary arbitration agreement entered into by an elderly adult or his authorized representative. We agree, however, with the trial court's ruling that the unavailability of an AAA panel of arbitrators does not void the Agreement. Therefore, we reverse the trial court's order denying LCCA's motion to compel arbitration and remand to the trial court for rulings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On August 13, 2004, LCCA admitted Herman Mathews ("Herman") to its long term healthcare facility, Life Care Center of Paradise Valley. Herman suffered from diabetes and dementia, which made him a vulnerable or incapacitated adult as defined by A.R.S. § 46–451(A)(5) and (10).[2] Vyntrice Mathews ("Vyntrice"), the granddaughter of Herman, had a general power of attorney to make decisions and enter agreements on Herman's behalf. On the day LCCA admitted Herman to its facility, Vyntrice signed the Agreement on her own behalf and on behalf of Herman. The Agreement clearly states: "The execution of this Arbitration Agreement is voluntary and is not a precondition to receiving medical treatment at

adult pursuant to A.R.S. § 46–451(A)(5) and (10). LCCA did not dispute in its motion to compel arbitration the allegations in the complaint and amended complaint regarding Herman.

or for admission to the Facility." Herman remained a resident at the Life Care Center of Paradise Valley until October 6, 2004.

¶ 3 In June 2006, Vyntrice filed a complaint and amended complaint against LCCA alleging negligence and vulnerable adult abuse/neglect/exploitation of Herman pursuant to APSA, A.R.S. § 46–455. Based on the Agreement, LCCA filed a motion to compel arbitration. The trial court rejected Mathews' argument that the Agreement was void because an AAA arbitration panel could not perform the arbitration, concluding that substitute arbitrators could be found. Nevertheless, it denied LCCA's motion to compel arbitration, finding that "the agreement [to arbitrate] is contrary [to] or takes away remedies permitted in the Arizona elder abuse statute."

¶ 4 We have jurisdiction pursuant to A.R.S. § 12–2101.01(A)(1) (2003). *See U.S. Insulation, Inc. v. Hilro Constr. Co., Inc.,* 146 Ariz. 250, 253, 705 P.2d 490, 493 (App.1985) ("The denial of a motion to compel arbitration is substantively appealable.").

## DISCUSSION

¶ 5 The main issue in this case is whether A.R.S. § 46–455(O) prevents the enforcement of a voluntary arbitration agreement between an elderly individual and a healthcare facility because such agreement would deprive an elderly person of rights and remedies available under APSA. We also address the trial court's ruling that the term in the Agreement requiring an AAA arbitration panel does not void the Agreement simply because AAA no longer arbitrates disputes between patients and healthcare facilities.

¶ 6 We review a trial court's denial of a motion to compel arbitration de novo when such denial relies on statutory interpretation, an issue of law. *See In re Estate of Jung,* 210 Ariz. 202, 204, ¶ 11, 109 P.3d 97, 99 (App.2005). We also review issues of law involving statutory interpretation de novo. *State v. Ross,* 214 Ariz. 280, 283, ¶ 21, 151 P.3d 1261, 1264 (App.2007). Our primary goal of statutory interpretation is to find and give effect to legislative intent. *Id.* at ¶ 22, 151 P.3d 1261. We first look to the plain language of the statute as the best indicator of that intent. *Fragoso v. Fell,* 210 Ariz. 427, 430, ¶ 7, 111 P.3d 1027, 1030 (App.2005). When statutory language is clear and unambiguous, we give effect to it and do not use other methods of statutory interpretation. *Id.* "When a statute is ambiguous or unclear, however, we attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Ross,* 214 Ariz. at 283, ¶ 22, 151 P.3d at 1264.

¶ 7 LCCA's main argument is that § 46–455(O) does not preclude arbitration in this case. Specifically, LCCA argues that the plain language of § 46–455(O) does not make the Agreement unenforceable. The disputed language is contained in § 46–455(O), which states: "A civil action authorized by this section is remedial and not punitive and does not limit and is not limited by any other civil remedy or criminal action or any other provision of law. Civil remedies provided under this title are supplemental and not mutually exclusive." LCCA contends that the language of § 46–455(O) does not preclude contracting parties from arbitrating their disputes. LCCA stresses that the legislature did not use language expressly precluding arbitration as a potential legal remedy in an elder abuse case.

¶ 8 Mathews, however, argues that the language of § 46–455(O) preserves an elder abuse victim's right to a jury trial if the victim so chooses. Mathews further interprets § 46–455(O) as preventing enforcement of any arbitration agreement involving claims subject to APSA or any laws used to enforce such an agreement because such an agreement necessarily limits claims for elder abuse or neglect brought pursuant to § 46–455.

¶ 9 We disagree with Mathews' broad interpretation of § 46–455(O). The plain language of § 46–455(O) does not address or allude to alternative dispute resolutions such as arbitration. The disputed language contained in § 46–455(O) states in part, "[a] civil action authorized by this section ... does not limit and is not limited by any other civil remedy or criminal action or any other provisions of law." We do not read this language

as being applicable to legally valid voluntary arbitration agreements. An arbitration agreement is not a civil remedy as defined by APSA, nor is it a criminal action or a provision of law. Instead, arbitration is a means to resolve a civil action in an alternative forum.

¶ 10 The legislature enacted APSA in 1988 because it determined that elder abuse was a serious problem requiring legislative intervention. *In re Guardianship/Conservatorship of Denton,* 190 Ariz. 152, 155, 945 P.2d 1283, 1286 (1997). The legislature first enacted § 46–455 as a criminal statute, making abuse of an incapacitated or vulnerable adult a class five felony. *Id.* In 1989, the legislature expanded the scope of the statute to include a civil cause of action, which it set forth in § 46–455 subsections (B) to (P).[3] *Id.* (citing 1989 Ariz. Sess. Laws, ch. 118, § 1). The main purpose of enacting APSA was to protect incapacitated or vulnerable adults. Consistent with that purpose, subsection (O) plainly tries to ensure that other statutes do not limit an incapacitated or vulnerable adult from bringing his or her civil action.

¶ 11 Although the Arizona Supreme Court has interpreted APSA broadly to increase the remedies available to and for elderly people who have been harmed by their caregivers, it has not specifically addressed whether APSA precludes the enforcement of voluntary arbitration agreements. We find each of the three supreme court cases interpreting APSA broadly to be distinguishable from the case at hand. Each case discusses an inherent conflict between APSA and another statute enacted by the legislature, and in each case the supreme court found APSA's legislative intent to outweigh the conflicting statute.

¶ 12 The supreme court first addressed APSA in Denton. In that case, the supreme court held that "representatives of elder abuse victims may recover damages for pain and suffering endured by the victims, notwithstanding the death of the victim." *Id.* at 157, 945 P.2d at 1288. In *Denton,* a husband

filed suit against his wife's nursing home alleging negligence, breach of contract and a statutory cause of action under APSA, § 46–455(B). *Id.* at 153, 945 P.2d at 1284. The wife died prior to the resolution of the action and the nursing home moved for partial summary judgment on the claim for damages for pain and suffering. *Id.* The nursing home relied on the survival statute, A.R.S. § 14–3110, which precludes victims of elder abuse and their representatives from recovering damages for pain and suffering after the death of the victim. *Id.* at 155, 945 P.2d at 1286.

¶ 13 The supreme court accepted jurisdiction of the case to address the inherent conflict between § 46–455 and the survival statute. *Id.* at 154, 945 P.2d at 1285. After considering the legislative intent and the plain language of the statutes, the supreme court found that the "legislature intended to provide victims of elder abuse or their representatives with the ability to recover damages for pain and suffering even if the victim dies prior to judgment." *Id.* at 157, 945 P.2d at 1288. The supreme court specifically relied on the plain language of subsection O, which stated: "The cause of action or the right to bring a cause of action pursuant to subsection B or C of this section shall not be limited or affected by the death of the incapacitated or vulnerable adult."[4] *Id.* at 156, 945 P.2d at 1287 (emphasis omitted).

¶ 14 The second supreme court case addressing APSA is *Estate of McGill v. Albrecht,* 203 Ariz. 525, 57 P.3d 384 (2002). In *Estate of McGill,* the supreme court addressed conflicting arguments regarding APSA and the Medical Malpractice Act ("MMA"). It held that a cause of action under MMA does not automatically preclude an action under APSA. McGill's estate filed suit against two doctors and ComCare, a company that provided McGill with behavioral and mental health services. *Id.* at 527, ¶ 3, 57 P.3d at 386. The complaint alleged negligence, neglect, and abuse of McGill under both APSA and MMA. *Id.* at ¶ 4, 57 P.3d at 384.

---

3. The current version of A.R.S. § 46–455 was amended after the supreme court decided the Denton case in 1997 and it now includes subsection (Q).

4. Subsection O is now labeled subsection P and subsection C is labeled subsection E.

The trial court dismissed the APSA claim, finding that it was based solely on the medical malpractice claim. *Id.*

¶ 15 The supreme court granted review to determine whether a victim of elder abuse could maintain a damage action pursuant to both APSA and MMA. *Id.* at 526, ¶ 1, 57 P.3d at 385. The supreme court reiterated the legislative intent of APSA as increasing the remedies available to and for elderly people who had been harmed by caregivers. *Id.* at 528, ¶ 6, 57 P.3d at 387. It ultimately laid out a test to determine when a negligent act or acts would be actionable under APSA. *Id.* at 530, ¶ 16, 57 P.3d at 389. The supreme court held that a cause of action under MMA does not automatically preclude an action under APSA; each case must be analyzed using the test laid out in this case.

¶ 16 Most recently, in *In re Estate of Mary Winn v. Plaza Healthcare, Inc.*, 214 Ariz. 149, 152, ¶ 15, 150 P.3d 236, 239 (2007), the supreme court held that "limitations placed on personal representatives by the probate code do not restrict APSA claims." In *Estate of Mary Winn*, almost five years after Mary's death, her husband brought an APSA claim against Plaza Healthcare alleging that Plaza abused or neglected Mary while she resided on its property. *Id.* at 150, ¶¶ 2, 3, 150 P.3d at 237. The court then appointed Mary's husband as personal representative of her estate. *Id.* at ¶ 3, 150 P.3d 236. Subsequently, Mary's husband moved to substitute himself as the plaintiff in the case in his capacity as the estate's personal representative. *Id.* Plaza argued that Probate Code § 14–3108(4) prevents a personal representative appointed more than two years after the death of the decedent from prosecuting claims on behalf of the estate. *Id.*

¶ 17 The supreme court again relied on the legislative intent of § 46–455, specifically subsections (O) and (P), in finding that the legislature intended "to remove probate code or other limitations on the personal representative's ability to seek a remedy on behalf of a deceased elder abuse victim's estate." *Id.* at 152, ¶ 14, 150 P.3d at 239. The court specifically noted that the legislative intent was to "increase the remedies available to elder abuse victims by providing that APSA claims proceed unimpeded by either the death of the elder abuse victim *or limitations imposed by other laws.*" *Id.* at 151, ¶ 9, 150 P.3d at 238 (emphasis added).

¶ 18 In each case, APSA came into conflict with another statute that took away specific remedies provided by APSA. The supreme court analyzed the plain language of APSA and the legislative intent in passing APSA to determine that APSA should be interpreted broadly to protect elder abuse victims' remedies against caregivers. Here, however, we do not have two conflicting statutes. Instead, we have a claimant interpreting APSA to preclude any elder abuse victim or an elder abuse victim's authorized representative from being compelled to arbitrate a claim pursuant to a voluntary arbitration agreement. Although we recognize that there may be situations where a waiver of the right to a trial or jury trial will be involuntary, we do not read APSA so broadly as to preclude a voluntary waiver of such rights. The main distinction between this case and those previously decided by the supreme court is that the claimant here voluntarily waived a right while the cited cases addressed statutes taking away such rights. Mathews voluntarily gave up the right to a trial by signing the Agreement; no statute required doing so.

¶ 19 Consequently, we find that the legislature did not intend to prevent parties from enforcing such voluntary arbitration agreements. The Agreement in this case clearly states that the arbitrator "shall apply the substantive law of Arizona." This statement demonstrates that an arbitrator would have the power to apply APSA in resolving the case. *See Hembree v. Broadway Realty & Trust Co., Inc.*, 151 Ariz. 418, 419, 728 P.2d 288, 289 (App.1986) ("An arbitrator's powers are defined by the agreement of the parties."); *Verdex Steel and Constr. Co. v. Bd. of Supervisors*, 19 Ariz.App. 547, 551, 509 P.2d 240, 244 (1973) (Arbitrators are empowered to decide both questions of fact and law.). Thus, a victim of elder abuse pursuant to APSA would not be deprived of the remedies specified by the legislature simply because

the case is resolved using arbitration.[5]

¶ 20 LCCA also contends that the trial court was correct in finding the term in the Agreement regarding the selection of an AAA arbitration panel did not void the Agreement. We address this issue because it would be an alternative ground to affirm the trial court's order. During oral argument on LCCA's motion to compel and in pleadings before the trial court, Mathews argued that the Agreement was void because the term requiring a panel of AAA arbitrators was a material term. Mathews informed the trial court that at the time Vyntrice signed the Agreement, which specified that any arbitration hearing would be held before "a board of three arbitrators, selected from the American Arbitration Association," the AAA no longer arbitrated cases between patients and healthcare facilities unless there was a post-dispute agreement to arbitrate. In its opening brief, LCCA argued that the trial court correctly held that a substitute arbitrator could be found in lieu of the AAA Arbitration Panel. LCCA cites to A.R.S. § 12–1503 (2003) to support its argument. Section 12–1503 states:

> If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

The fact that the Agreement specified the use of an AAA arbitration panel does not affect our prior analysis. Pursuant to the plain language of A.R.S. § 12–1503, the trial court may appoint a replacement arbitrator or arbitrators.

¶ 21 Moreover, the record contains no evidence that an AAA arbitration panel was a significant or material term to Vyntrice when she executed the Agreement. *See Lake v. Stewart,* 117 Ariz. 520, 522, 573 P.2d 920, 922 (App.1977) ("It is well settled that where there are no findings of fact, we must assume the trial court made all the necessary findings to support the judgment."). Based on A.R.S. § 12–1503 and the trial court's ruling, we assume the trial court made all necessary findings to support its ruling on Mathews' AAA arbitration panel argument. We agree with LCCA and find that the trial court did not err in finding that it could appoint a replacement arbitrator or arbitrators to comply with the terms of the Agreement.

¶ 22 LCCA also argues that the Federal Arbitration Act is controlling and would preclude any court from interpreting A.R.S. § 46–455(O) in a manner that would prevent arbitration or single out arbitration provisions from contracts. Based on our statutory analysis, we need not address this argument.

¶ 23 Furthermore, we do not address Mathews' arguments that the Agreement is unconscionable, invalid, unenforceable, and a contract of adhesion. Nor do we address Mathews' argument that LCCA violated its duties to Herman and thus the Agreement should not be enforced based on principles of equity. These issues were not the basis of the trial court's ruling and were either not raised or not fully developed before the trial court. *See Englert v. Carondelet Health Network,* 199 Ariz. 21, 26–27, ¶ 13, 13 P.3d 763, 768–69 (App.2000) (We generally do not consider issues raised for the first time on appeal unless they are issues of statewide importance or rise to the level of fundamental error.). Therefore, we will not address the issues on appeal.

5. In July 2007, a panel of Division Two of this Court affirmed a trial court's order compelling arbitration pursuant to a voluntary alternative dispute resolution agreement signed by an alleged elder abuse victim's wife and the healthcare facility caring for the elder adult. *Ruesga v. Kindred Nursing Ctrs. W., L.L.C.,* 215 Ariz. 589, 592, 600, ¶¶ 6, 40, 161 P.3d 1253, 1256, 1264 (App.2007) (finding wife's long history of making decisions on husband's behalf bound husband and his estate to the alternative dispute resolution agreement signed by wife upon husband entering the nursing facility in regard to resolving wife's suit filed on behalf of husband, including APSA claims). The issue of Vyntrice's authority to sign the Agreement on behalf of her grandfather is not before us.

**612**

¶ 24 We note that A.R.S § 12–1501 (2003) provides grounds upon which a party may contest the validity of an arbitration agreement. The record before us does not demonstrate that Mathews argued that the Agreement was unconscionable, invalid, unenforceable, and a contract of adhesion in pleadings or at oral argument before the trial court. Although Mathews mentioned A.R.S. § 12–1501 in the response to LCCA's motion to compel arbitration, in the context of negating LCCA's public policy argument, Mathews did not raise the specific issues of enforceability. Consequently, our decision that the arbitration agreement does not violate APSA does not preclude the trial court from addressing such issues on remand.

### CONCLUSION

¶ 25 For the foregoing reasons, we reverse the trial court's order denying LCCA's motion to compel arbitration on the ground that the arbitration agreement conflicts with APSA, and remand the case for proceedings consistent with this decision. We affirm the trial court's ruling that the term requiring an AAA arbitration panel does not void the Agreement.

CONCURRING: DANIEL A. BARKER, Presiding Judge, and DIANE M. JOHNSEN, Judge.

