IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

PIMA COUNTY, et al., *Plaintiffs/Appellees,*

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellants.*

No. 1 CA-TX 20-0001
FILED 8-10-2021

---

Appeal from the Arizona Tax Court
No. TX2018-000737
The Honorable Christopher T. Whitten, Judge

**REVERSED AND REMANDED WITH DIRECTION**

---

COUNSEL

Dickinson Wright PLLC, Phoenix
By P. Bruce Converse, Bennett Evan Cooper
*Counsel for Plaintiff/Appellee Tucson Unified School District No. 1*

Pima County Attorney's Office, Tucson
By Victoria L. Buchinger
*Counsel for Plaintiff/Appellee Pima County*

Arizona Attorney General's Office, Phoenix
By Drew C. Ensign, Robert J. Makar
*Counsel for Defendant/Appellant State of Arizona*

Arizona Attorney General's Office, Phoenix
By Lisa A. Neuville, Jerry A. Fries
*Counsel for Defendant/Appellant Arizona Department of Revenue*

Arizona Attorney General's Office, Phoenix
By Kevin D. Ray
*Counsel for Defendants/Appellants Arizona State Board of Education, Arizona Superintendent of Public Instruction*

---

## OPINION

Judge Lawrence F. Winthrop[1] delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**W I N T H R O P**, Judge:

¶1        Appellants—the State of Arizona, the Arizona Department of Revenue, the Arizona State Board of Education, and the Arizona Superintendent of Public Instruction (collectively, "the State")—challenge the tax court's summary judgment ruling in favor of Pima County and Tucson Unified School District ("TUSD") (collectively, "Appellees"). The State contends recent revisions to A.R.S. § 15-910 eliminated its obligation under A.R.S. § 15-972(E) to reimburse TUSD for desegregation expenses as additional state aid for education. We agree, and accordingly reverse the ruling of the tax court and remand, directing the tax court to enter judgment in favor of the State.

### FACTS AND PROCEDURAL HISTORY

¶2        In 1980, Arizona voters amended the Arizona Constitution to cap the amount of ad valorem taxes on residential property in any tax year at one percent of the property's full cash value. Ariz. Const. art. 9, § 18(1).

---

[1]        Judge Lawrence F. Winthrop was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2021. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to Arizona Revised Statutes ("A.R.S.") section 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Winthrop as a judge *pro tempore* in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

The amendment, however, identified three types of ad valorem taxes to which the cap does not apply:

(a) Ad valorem taxes or special assessments levied to pay the principal of and interest and redemption charges on bonded indebtedness or other lawful long-term obligations issued or incurred for a specific purpose.

(b) Ad valorem taxes or assessments levied by or for property improvement assessment districts, improvement districts and other special purpose districts other than counties, cities, towns, school districts and community college districts.

(c) Ad valorem taxes levied pursuant to an election to exceed a budget, expenditure or tax limitation.

*Id.* at art. 9, § 18(2). The amendment also charged the Arizona Legislature with "provid[ing] by law a system of property taxation consistent with the provisions of this section." *Id.* at art. 9, § 18(8). The legislature did so, in part, by enacting A.R.S. § 15-972(E):

Before levying taxes for school purposes, the board of supervisors shall determine whether the total primary property taxes to be levied for all taxing jurisdictions on each parcel of residential property, in lieu of this subsection, violate article IX, section 18, Constitution of Arizona. . . . If the board of supervisors determines that such a situation exists, the board shall apply a credit against the primary property taxes due from each such parcel in the amount in excess of article IX, section 18, Constitution of Arizona. Such excess amounts shall also be additional state aid for education for the school district or districts in which the parcel of property is located.

¶3        Essentially, A.R.S. § 15-972(E) implements the one percent cap in three steps: (1) the county board of supervisors determines whether the total "primary property taxes" to be levied for all taxing jurisdictions exceeds the one percent cap; (2) if so, the board applies a credit against "primary property taxes" due from each parcel to comply with the one percent cap; and (3) the State reimburses affected school districts the excess primary property tax amounts as "additional state aid for education."

¶4 The statutes define "[p]rimary property taxes" as "all ad valorem taxes except for secondary property taxes." A.R.S. § 15-101(20). "Secondary property taxes" are generally defined as:

> [A]d valorem taxes used to pay the principal of and the interest and redemption charges on any bonded indebtedness or other lawful long-term obligation issued or incurred for a specific purpose by a school district or a community college district and amounts levied pursuant to an election to exceed a budget, expenditure or tax limitation.

A.R.S. § 15-101(25).

¶5 TUSD became subject to a desegregation order in 1978. *See Fisher v. Tucson Unified Sch. Dist.*, 329 F. Supp. 3d 883, 887 (D. Ariz. 2018). In 1985, the legislature amended A.R.S. § 15-910 to allow a school district operating under a desegregation order to "budget for expenses of complying with a court order of desegregation." 1985 Ariz. Sess. Laws, ch. 166, § 15 (1st Reg. Sess.) (codified as amended at A.R.S. § 15-910(G)).

¶6 In accordance, the legislature created a method to allow the State to pay excess desegregation expenses by allowing the district to do one or both of the following:

> 1. Use monies from the maintenance and operation fund equal to any excess desegregation or compliance expenses beyond the revenue control limit before June 30 of the current year.
>
> 2. Notify the county school superintendent to include the cost of the excess expenses in the county school superintendent's estimate of the additional amount needed for the school district from the primary property tax as provided in section 15-991.

A.R.S. § 15-910(H)(1)-(2) (2016) (effective Aug. 16, 2016 to Aug. 2, 2018).

¶7 In 2018, the legislature amended A.R.S. § 15-910(G)-(I), changing all mentions of "primary property tax" to either "property tax" or "secondary property tax." 2018 Ariz. Sess. Laws, ch. 283, § 2 (2d Reg. Sess.) (S.B. 1529). The legislature also added a new subsection (L):

> Beginning in fiscal year 2018-2019, subsections G through K of this section apply only if the governing board uses

revenues from secondary property taxes rather than primary property taxes to fund expenses of complying with or continuing to implement activities that were required or allowed by a court order of desegregation or administrative agreement with the United States department of education office for civil rights directed toward remediating alleged or proven racial discrimination that are specifically exempt in whole or in part from the revenue control limit and district additional assistance. Secondary property taxes levied pursuant to this subsection do not require voter approval, but shall be separately delineated on a property owner's property tax statement.

A.R.S. § 15-910(L) (2018); *see also* 2018 Ariz. Sess. Laws, ch. 283, §§ 2, 13 (2d Reg. Sess.) (S.B. 1529).

¶8 TUSD currently operates under an updated desegregation order entered in 2013. *See Fisher*, 239 F. Supp. 3d at 888. TUSD adopted a budget for the 2018-19 fiscal year that included $63,711,047 for desegregation order expenses under § 15-910(G). In accordance with § 15-910(I), TUSD submitted that budget to the Pima County Superintendent of Schools, who then submitted TUSD's primary and secondary property tax levies and rates to the county board of supervisors.

¶9 Pima County, in turn, totaled all 2018-19 ad valorem taxes levied by the various taxing jurisdictions for parcels within TUSD's boundaries and concluded that taxes to be collected exceeded the one percent cap by $8,113,188.62. The county reduced its tax collection from residential property owners by that amount and included that sum in its report of state aid calculations as "additional state aid for education" pursuant to § 15-972(E). But because TUSD had budgeted to pay 2018-19 desegregation expenses with secondary property taxes pursuant to A.R.S. § 15-910(L), the Department of Revenue determined those expenses did not qualify as "additional state aid for education" pursuant to A.R.S. § 15-972(E) because such credit may only be applied "against the primary property taxes due" from property owners. The Department of Revenue did not include the excess desegregation expenses in the state aid calculations it presented to the State Board of Education. Accordingly, the State provided no such financial aid to TUSD or Pima County for the 2018-19 fiscal year.

¶10 TUSD and Pima County sued the State seeking payment of the disputed amount. On cross-motions for summary judgment, the tax

court ruled for TUSD and Pima County, finding that "[t]he A.R.S. § 15-101(25) definition of 'secondary property taxes,' does <u>not</u> include those taxes used to pay expenses of complying with desegregation orders. . . . They are therefore 'primary property taxes' pursuant to A.R.S. § 15-101(20)." It also found the State's position to be "unworkable" in conjunction with the one percent constitutional limitation on ad valorem taxes. The court ordered the State to pay the disputed amount to Pima County for the benefit of TUSD. The State timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## ANALYSIS

### I. *Standard of Review*

¶11 "In reviewing the superior court's rulings on cross-motions for summary judgment, we consider questions of law *de novo* but review the facts in a light most favorable to the party against whom summary judgment was granted." *In re Est. of Podgorski*, 249 Ariz. 482, 484, ¶ 8 (App. 2020) (citing *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191 (App. 1994)). The court should grant summary judgment only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). "Summary judgment is inappropriate where the facts, even if undisputed, would allow reasonable minds to differ." *Nelson*, 181 Ariz. at 191 (citing *Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990)).

¶12 We review *de novo* the tax court's interpretations of the Arizona Constitution and the relevant statutes. *Univ. Med. Ctr. Corp. v. Dep't of Revenue*, 201 Ariz. 447, 450, ¶ 14 (App. 2001). Our primary goal in interpreting a statute is to effect legislative intent. *Ariz. Chapter of the Associated Gen. Contractors of Am. v. City of Phoenix*, 247 Ariz. 45, 47, ¶ 7 (2019). We first look to the statute's plain language as the best indicator of its intent. *Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.*, 217 Ariz. 606, 608, ¶ 6 (App. 2008). If the "language is clear and unambiguous, we give effect to it and do not use other methods of statutory interpretation." *Id.* If it is not, however, we interpret the statutory scheme as a whole, considering the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose. *Id.* (quoting *State v. Ross*, 214 Ariz. 280, 283, ¶ 22 (App. 2007)).

### II. *Statutory Characterization of Desegregation Expenses*

¶13 The State argues A.R.S. § 15-910(L) "changed the statutory treatment of excess desegregation expenditures" so that "they can no longer be funded by primary taxes and thus cannot be reimbursed by the State

under A.R.S. § 15-972(E)." As an initial matter, all parties agree that the legislative changes to A.R.S. § 15-910 did not alter which ad valorem taxes fall within the constitutional one percent cap under Article 9, Section 18, of the Arizona Constitution. As noted above, the cap applies to all ad valorem taxes or special assessments with only three specified exceptions. Ariz. Const. art. 9, § 18(2). Accordingly, and as the State acknowledges, desegregation expenses remain subject to the one percent cap unless they fall within one of the exceptions.

¶14 But, contrary to the tax court's conclusion, it does not follow that because desegregation expenses are subject to the one percent cap, so too must they be subject to reimbursement by the State under A.R.S. § 15-972(E). The State concedes that the A.R.S. § 15-101(25) definition of "[s]econdary property taxes," which the legislature did not amend in 2018, "is similar, but not identical, to the Arizona Constitution's exceptions to the One-Percent Limitation." *See* A.R.S. § 15-101(25). Indeed, the definition tracks the first and third exceptions to the constitutional cap as stated above. *Compare* Ariz. Const. art. 9, § 18(2)(a), (c) (describing certain ad valorem taxes not subject to the one percent cap), *with* A.R.S. § 15-101(25) (exempting some ad valorem taxes from the one percent cap). But the Arizona Constitution does not define "secondary property taxes." That is a term of the legislature's creation, and the legislature is free to modify it (and, given the textual link between the definition of "primary property taxes" and "secondary property taxes," when the legislature modifies the latter, it necessarily modifies the former). Accordingly, the legislature is free to alter the characterization of taxes assessed for one purpose or another as "primary" or "secondary" without running afoul of the one percent constitutional mandate. Moreover, the legislature's decision in A.R.S. § 15-910(L) to allow a school district subject to a desegregation order to exceed revenue control limits only if it budgets secondary property taxes to pay desegregation expenses does not, as the tax court suggested, function to "trump the constitutional limitation on ad valorem taxes found in Ariz. Const. art. 9, § 18." The only exceptions the constitution allows to its one percent cap on all ad valorem taxes are specified in Article 9, Section 18(2), which makes no distinction between "primary" or "secondary" property taxes. Nor does the constitution mandate that the State pay any excess expense a district incurs when complying with a desegregation order; that is an obligation imposed, if at all, only by statute, which the legislature was free to amend. *See* Ariz. Const. art. 9, § 18; 1985 Ariz. Sess. Laws, ch. 166, § 15 (1st Reg. Sess.).

¶15 The tax court concluded that because the definition of "secondary property taxes" in A.R.S. § 15-101(25) does not include taxes

used to pay expenses of complying with desegregation orders, such expenses "are therefore 'primary property taxes' pursuant to A.R.S. § 15-101(20)." We disagree. The language of A.R.S. § 15-910(L) creates a secondary tax category distinct from the definition in A.R.S. § 15-101(25). This new secondary tax category is unique in that it allows a county to budget and collect taxes to pay for desegregation expenses without voter approval if the county's total ad valorem taxes do not exceed the constitutional one percent cap. Although the meaning of A.R.S. § 15-910(L) would likely have been more clear if the legislature had amended § 15-101(25) as well, the legislature's failure to amend the definition in A.R.S. § 15-101(25) is not fatal to the State's position. To the extent any conflict exists between the general "secondary property tax" definition of A.R.S. § 15-101(25) and the new delineation in A.R.S. § 15-910(L) to fund desegregation expenses through secondary property taxes, "the more recent, specific statute governs over the older, more general statute." *Lemons v. Superior Court*, 141 Ariz. 502, 505 (1984). The tax court erred in concluding the expense of complying with a desegregation order could not be funded though secondary property taxes simply because the desegregation expenses did not fit under the more general definition in A.R.S. § 15-101(25).

¶16 The tax court also found it would be "unworkable" to remove desegregation expenses from the calculation in A.R.S. § 15-972(E). But the tax court's conclusion in that regard overlooks the fact that the parties involved did understand and implement the new system: TUSD included the 2018-19 desegregation expenses as secondary property taxes pursuant to amended § 15-910(L); Pima County totaled all 2018-19 ad valorem taxes, including the desegregation expenses, levied by the various taxing jurisdictions for parcels within TUSD's boundaries to determine what portion of those expenses exceeded the one percent cap; after receiving that total, the Department of Revenue subtracted the non-qualifying expenses, i.e., the desegregation expenses, from the "additional state aid" calculation and paid the resulting amount. Following these procedures, TUSD may continue to fund desegregation expenses pursuant to § 15-910(L) using either (1) taxes that fall within the one percent limitation or (2) taxes approved by its voters in an override election.

¶17 Further, we respectfully disagree that allowing the State to decline to pay excess desegregation expenses can be summarily deemed "unworkable," considering that for more than five years after the 1978 desegregation order was imposed, the State did not cover excess desegregation expenses. *See* 1985 Ariz. Sess. Laws, ch. 166, § 15 (1st Reg. Sess.) (creating a system whereby the State will pay excess desegregation

expenses). Just as the legislature previously enacted a method to assist districts in paying desegregation expenses, so too could the legislature enact new legislation that would end that practice. The change at issue here—amending the characterization of desegregation expenses so that the excess of such expenses would not be paid by the State—was a policy decision consistent with the legislature's power of the purse. *See Le Febvre v. Callaghan*, 33 Ariz. 197, 204 (1928) ("[A]ll power to appropriate money for public purposes or to incur any indebtedness therefor . . . rests in the Legislature."); Ariz. Const. art. 4, pt. 2, § 20 (appropriations bills); Ariz. Const. art. 9, § 5 (power to contract debts).

**¶18** For the foregoing reasons, the State was entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a). We therefore reverse the judgment in favor of TUSD and direct the tax court to enter judgment in favor of the State.

## CONCLUSION

**¶19** We reverse and remand, directing the tax court to enter judgment in favor of the State. Appellees TUSD and Pima County request their attorneys' fees on appeal pursuant to A.R.S. § 12-348.01. Because Appellees are not the successful parties on appeal, we deny their requests for fees. We award the State its taxable costs on appeal pursuant to A.R.S. § 12-341, upon compliance with Arizona Rule of Civil Appellate Procedure 21(b).



AMY M. WOOD • Clerk of the Court
FILED:    AA