396 P.3d 627

**Diana GLAZER, Plaintiff/Appellant,**

v.

**STATE of Arizona, Defendant/Appellee.**

**No. 1 CA-CV 16-0416**

Court of Appeals of Arizona,
Division 1.

FILED 5/16/2017

As Amended May 22, 2017

The Leader Law Firm, Tucson, By John P. Leader, Aiken & Scoptur, S.C., Milwaukee, WI, By Timothy Aiken, Zachar Law Firm, P.C., Phoenix, By Christopher J. Zachar, Co-Counsel for Plaintiff/Appellant

Arizona Attorney General's Office, Phoenix, By Daniel P. Schaack, Fred Zeder, Counsel for Defendant/Appellee

Presiding Judge Randall M. Howe delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

## OPINION

HOWE, Judge:

¶ 1 This appeal is from a trial court order holding that interest on a $7.8 million judgment against the State shall accrue pursuant to A.R.S. § 41–622(F), which allows for accrual at a lower interest rate than the statutory rate during an appeal of a judgment paid out of the Risk Management Revolving Fund. Diana Glazer, to whom that judgment was awarded, argued that the reduced interest rate should not apply because the judgment was originally paid out of the Construction Insurance Fund. The State argued that the lower interest rate should apply because although it initially made payment from the Construction Insurance Fund due to an administrative error, once the State recognized the error, it rectified the error by reimbursing the Construction Insurance Fund from the Risk Management Revolving Fund.

¶ 2 Because the judgment against the State was ultimately paid out of the Risk Management Revolving Fund, the trial court did not err by applying the reduced interest rate described in A.R.S. § 41–622(F) for the duration of the appeal. However, because the State's insurance carrier will reimburse the State for $800,000 of that judgment, the reduced interest rate applies only to $7 million of the judgment. Accordingly, we affirm the trial court's order that A.R.S. § 41–622(F) applies, but reverse the order's application of the statute to the entire judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 3 In 2007, Glazer was seriously injured in a head-on, crossover collision with another vehicle on Interstate 10 that killed her husband and young daughter. Glazer sued the State, which designed and maintained the interstate, for negligence in failing to construct a median between the westbound and eastbound lanes to prevent crossover collisions. After a nine-day jury trial, the jury awarded Glazer a verdict of $7.8 million.

¶ 4 Glazer subsequently lodged her proposed form of judgment, which provided for "interest at the legal rate of prime plus one percent (currently 4.25%) per annum" from the date of the jury's verdict until paid in full. The State objected, arguing that the proposed judgment did not account for the possibility that a lower interest rate could apply while the case was pending appeal. Although the legal interest rate normally applies, A.R.S. § 41–622(F) allows interest to accrue at a reduced rate during appeal for judgments paid from the Risk Management Revolving Fund. Glazer agreed, responding that the interest rate during the time of an appeal may be at a reduced rate, "but only so long as the Judgment is ultimately paid out of the 'Risk Management Revolving Fund.' If the Judgment is ultimately paid from elsewhere, [the legal rate] remains applicable." However, the trial court entered the judgment against the State with interest to accrue at the legal rate.

¶ 5 The State then moved to amend the court's judgment, arguing again that it improperly failed to account for a reduced interest rate on the judgment while the case was appealed. Glazer objected, arguing that the court could not issue an order on "possibilities," and that the reduced rate would apply only after the State paid the judgment and proved that the monies came from the Risk Management Revolving Fund. The trial court granted the State's motion and subsequently entered an amended judgment providing that "A.R.S. § 41–622(F) may supplant the normal statutory interest rate during the pendency of an appeal."

¶ 6 After the trial court entered its amended judgment, the State appealed on issues

unrelated to the interest rate. When this Court affirmed the trial court's judgment, the State petitioned for review to the Arizona Supreme Court. That court also affirmed the trial court's judgment and issued its mandate in the summer of 2015. Accordingly, the Arizona Department of Administration's ("Department") risk management section began to process the payment of the judgment. The State is self-insured up to $7 million, meaning that the State pays for judgments against it out of its own funds up to that amount. Anything over that amount is covered by an excess insurance policy with the State's insurance carrier. Because amounts above $7 million are paid for through reimbursements from the insurance carrier, the Department generated a "risk management payment request" for each of three installments totaling the entire $7.8 million judgment. Each of those requests reflected that the loss type was "GEN–CIF," a designation made for general liability losses that arise from claims relating to a roadway's design. The loss type code does not instruct which account payment should come from though, so the requests must also include an account code. Each of the three requests for the Glazer payments reflected the payment account number of the Risk Management Revolving Fund.

¶ 7 A Department adjuster approved the requests on May 14, 2015, and forwarded them for further approval by two other authorized supervisors. After receiving the additional approvals, the requests were sent to a financial services technician for processing. Upon receiving the requests, the technician noticed the "GEN–CIF" loss type. Interpreting "CIF" to mean that the payment should come from the Construction Insurance Fund, the technician changed the payment account number from the Risk Management Revolving Fund to that of the Construction Insurance Fund. This was the last recorded change to the requests and was made without approval from any of the authorized adjusters or supervisors that had previously approved the requests. Three days later, the Department issued three checks to satisfy the judgment. The Department realized the payment error two months later in July 2015. To rectify it, a Department risk manager transferred $7.8 million from the Risk Management Revolving Fund to the Construction Insurance Fund to reimburse it.

¶ 8 In August 2015, Glazer requested a status conference to determine the applicable interest rate on the judgment, stating that the parties disagreed on whether the legal or the reduced rate applied. Specifically, the State argued that the reduced rate should apply because it corrected its mistake and transferred the debt to the proper account. Glazer argued that the higher rate applied because the State failed to prove that it paid the judgment out of the Risk Management Revolving Fund. Glazer also argued that even if A.R.S. § 41–622(F) applied, the statute's purpose of saving the State money would not be served because the insurance carrier—not the State—would pay the total interest through the excess insurance policy. Glazer also requested an evidentiary hearing on the issue.

¶ 9 Before the evidentiary hearing, Glazer moved for summary judgment, arguing that because the State issued the check to pay the judgment from the Construction Insurance Fund, not the Risk Management Revolving Fund, A.R.S. § 41–622(F) did not apply. The State cross-moved for summary judgment, positing that because the Construction Insurance Fund is not a permissible source for paying judgments like the one awarded in this case and the funds ultimately came from the Risk Management Revolving Fund, A.R.S. § 41–622(F) applied to the judgment. After the evidentiary hearing, the trial court issued its ruling, agreeing with the State that A.R.S. § 41–622(F) applied to the $7.8 million judgment because the funds used to pay that judgment ultimately came from the Risk Management Revolving Fund. The trial court found that the original payment from the Construction Insurance Fund was an accounting mistake caused by the unauthorized change by the technician. The court consequently ordered that "the interest accruing on Plaintiffs' $7.8 million Judgment shall be paid at [the reduced rate] during the course of Defendant's appeal." Glazer timely appealed from that order.

## DISCUSSION

¶ 10 Glazer argues that the trial court erred by holding that A.R.S. § 41–622(F) applies because the judgment was paid from the Construction Insurance Fund. Alternatively, Glazer argues that the trial court erred by holding that the reduced interest rate applied to the entire $7.8 million judgment because the State paid only $7 million of that amount. We review questions of statutory interpretation de novo as questions of law. *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178 ¶ 5, 181 P.3d 219, 225 (App. 2008). Because the State paid the judgment against it out of the Risk Management Revolving Fund, the lower interest rate prescribed by A.R.S. § 41–622(F) applies for the duration of the case's appeal. However, because the State's insurance carrier will pay $800,000 of the judgment, the reduced interest rate applies only to the $7 million paid by the State from the Risk Management Revolving Fund.

¶ 11 Our primary goal in interpreting a statute is to give effect to legislative intent. *JHass Grp. L.L.C. v. Ariz. Dep't of Fin. Insts.*, 238 Ariz. 377, 384 ¶ 27, 360 P.3d 1029, 1036 (App. 2015). In doing so, we look to the statute's plain language as the best indicator of that intent. *Azore, LLC v. Bassett*, 236 Ariz. 424, 427 ¶ 8, 341 P.3d 466, 469 (App. 2014). Further, we must construe the statute in context with other related provisions and its place in the statutory scheme. *Hosea v. City of Phx. Fire Pension Bd.*, 224 Ariz. 245, 250 ¶ 23, 229 P.3d 257, 262 (App. 2010). When the statute's language is clear and unambiguous, we must give effect to that language without employing other rules of statutory construction. *Indust. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77 ¶ 7, 219 P.3d 285, 287 (App. 2009).

¶ 12 Arizona statutes govern the interest rates applicable to judgments. For most judgments, A.R.S. § 44–1201(B) requires that, unless otherwise provided for by a different statute or in a written agreement, interest on any judgment be "the lesser of ten per cent per annum or at a rate per annum that is equal to one per cent plus the prime rate" as published by the federal reserve system. For certain judgments against the State however, A.R.S. § 41–622(F) provides for a different interest rate: "Interest on any judgment against this state paid for out of the risk management revolving fund shall accrue at the average yield offered by the United States treasury bills during the course of the appeal." This is usually a reduced rate.[1]

¶ 13 The trial court correctly concluded that A.R.S. § 41–622(F) applies and interest therefore accrued at the lower interest rate during the course of the appeal. The statute's language is clear: any judgment against the State that is paid for out of the Risk Management Revolving Fund shall accrue interest at the reduced rate. *See Minjares v. State*, 223 Ariz. 54, 62–63 ¶¶ 37–41, 219 P.3d 264, 272–73 (App. 2009) (examining A.R.S. § 41–622's plain language and legislative history). The statute does not require that the checks issued to pay the judgment be issued from the Risk Management Revolving Fund. Nor does the statute require that the judgment be originally paid from that fund. *See id.* at 63 ¶ 41, 219 P.3d at 273 (stating that "the legislature clearly intended that when a judgment against the State *would be paid from* the Risk Management Revolving Fund, the normal statutory rate would not apply if there was an appeal") (emphasis added). Instead, A.R.S. § 41–622(F) plainly states that if the Risk Management Revolving Fund pays for a judgment against the State, that judgment accrues interest at a lower rate pending appeal.

¶ 14 Here, although the funds to satisfy the judgment originally came out of the Construction Insurance Fund, the judgment against the State was ultimately paid out from the Risk Management Revolving Fund. The payment requests had been generated and approved by three supervisors with the account payment code for the Risk Management Revolving Fund. Without authorization, a technician changed the code to that of the Construction Insurance Fund. This was the

---

1. *See Daily Treasury Bill Rates Data,* U.S. Dep't of the Treasury, *available at* https://www. treasury.gov/resource-center/data-chart-center/ interestrates/Pages/TextView.aspx?data=billrates (last visited May 10, 2017).

last documented change to the payment requests before the State issued the checks to Glazer. Approximately two months later, the Department became aware of the error and corrected it by transferring the debt to the account to which it had originally been coded. Had the Department risk manager not transferred the funds to the Construction Insurance Fund and the debt to the Risk Management Revolving Fund, the former would have been the account that paid the judgment. However, that was not the case here. Despite the accounting error, the judgment against the State was paid for out of the Risk Management Revolving Fund.

¶ 15 Glazer argues that the statute cannot apply because the interest due is an insured loss that will be paid by the State's excess insurance coverage. However, who will pay for the accrued interest has no effect on what rate that interest will accrue at. This is particularly so here, where A.R.S. § 41–622(F)'s application depends only on the type of judgment and source of its payment, not on the interest due. Thus, A.R.S. § 41–622(F)'s requirements are met and the trial court did not err by applying the lower interest rate for the duration of the appeal.

¶ 16 The court erred, however, by applying the reduced interest rate to the entire $7.8 million judgment. The State will ultimately pay only $7 million of the judgment out of the Risk Management Revolving Fund. The State's insurer will reimburse the State for the balance of its obligation. Thus, because the judgment that the State paid out of the Risk Management Revolving Fund totals $7 million, only that amount accrued interest at the rate pursuant to A.R.S. § 41–622(F). The remaining $800,000 of the judgment will be paid by the State's insurer and does not qualify for the reduced interest rate. The State argues that the reduced interest rate should apply to the entire judgment because the statute's language does not make exceptions for amounts covered by excess insurance coverage. However, the limiting language is within the statute, which allows application only for "any judgment ... paid for out of the risk management revolving fund." The insurance carrier will not pay out of that fund, so the statute does not apply to

that amount. We therefore remand to the trial court to modify its ruling consistent with this decision and to impose the proper interest rate on the balance of the judgment.

## CONCLUSION

¶ 17 For the foregoing reasons, we affirm the trial court's ruling that A.R.S. § 41–622(F) applies, but only to the $7 million paid for by the State. We remand to the trial court to enter a corrected order consistent with this decision.