IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**DIANA GLAZER,**
*Plaintiff/Appellant,*

*v.*

**STATE OF ARIZONA,**
*Defendant/Appellee.*

No. CV-17-0229-PR
Filed August 21, 2018

Appeal from the Superior Court in Maricopa County
The Honorable Jo Lynn Gentry, Judge
No. CV 2009-001261
**AFFIRMED**

Opinion of the Court of Appeals, Division One
242 Ariz. 391 (App. 2017)
**VACATED IN PART AND REMANDED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor General, Daniel P. Schaack (argued) and Fred M. Zeder, Assistant Attorneys General, Phoenix, Attorneys for State of Arizona

John P. Leader (argued), The Leader Law Firm, Tucson; and Christopher J. Zachar, Zachar Law Firm, P.C., Phoenix, Attorneys for Diana Glazer

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES TIMMER, BOLICK, LOPEZ, and BERCH (RETIRED) * joined.

_____

JUSTICE BRUTINEL, opinion of the Court:

¶1        In 2012, Diana Glazer obtained a $7.8 million judgment against the State.  The State appealed, and we affirmed.  *See Glazer v. State* (*Glazer I*), 237 Ariz. 160 (2015).  Here, we are asked to decide the rate at which interest on that judgment accrued pending appeal.  We hold that the interest rate prescribed by A.R.S. § 41-622(F) applies to the entire judgment against the State, including any portion for which the State may be reimbursed by its excess insurance coverage.

## I.    BACKGROUND

¶2        In 2007, a car accident badly injured Glazer and took the lives of her husband and daughter.  Glazer sued the State for negligently failing to install a freeway median barrier or warn of its absence, *see Glazer I*, 237 Ariz. at 162 ¶ 3, and, in June 2012, a jury awarded her $7.8 million, *see id.* at 163 ¶ 7.

¶3        Following the State's unsuccessful appeal, the Arizona Department of Administration's risk management section directed that the judgment should be paid from the State's Risk Management Revolving Fund ("Revolving Fund").   An accounting technician, however,

_____

* Justice Andrew W. Gould has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Rebecca White Berch, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

erroneously paid the judgment from the Construction Insurance Fund ("CIF"). When the mistake was discovered, the Department reimbursed the CIF from the Revolving Fund.[1]

¶4        The legislature created the Revolving Fund to pay claims against the State and to buy insurance, among other things. *See* § 41-622(A). It is funded by premiums paid by State agencies, insurance reimbursements, and other sources. The State self-insures for claims up to $7 million and purchases an umbrella policy to reimburse it for payments that exceed that amount.

¶5        In 2015, the parties filed cross-motions for summary judgment to resolve the calculation of post-judgment interest accrued during the pendency of the appeal. Glazer argued that, because the judgment had initially been paid from the CIF, it was subject to the rate of interest prescribed by A.R.S. § 44-1201(B) instead of the lower rate prescribed by § 41-622(F) for judgments paid from the Revolving Fund. The State maintained that the lower rate applied because the Revolving Fund had reimbursed the CIF. At the time, the § 44-1201(B) rate was 4.25% per year, and the § 41-622(F) rate was less than 1%. The superior court granted judgment for the State.

¶6        The court of appeals affirmed in part, agreeing that the mistaken payment from the CIF had no bearing on the interest rate. *Glazer II*, 242 Ariz. at 394–95 ¶¶ 13–14, 17. The court noted that because the Revolving Fund and not the CIF ultimately paid the judgment against the State, the lower rate applied. *Id.* at 394 ¶ 14. The court, however, took this analysis one step further, finding that because the State's excess insurer would reimburse the State for any portion of the judgment that exceeded its self-insured retention, the State would ultimately pay only $7 million. *Id.* at 395 ¶ 16. The court held that "[t]he remaining $800,000 of the judgment will be paid by the State's insurer and does not qualify for the

---

[1] For a more detailed history, see the opinion of the court of appeals. *Glazer v. State* (*Glazer II*), 242 Ariz. 391, 392–93 ¶¶ 3–9 (App. 2017).

reduced interest rate." *Id.* at 395 ¶ 17.

**¶7**        We granted the State's petition for review because the calculation of interest on judgments against the State is a recurring legal question with statewide significance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.    DISCUSSION

**¶8**        The State argues that the reduced interest rate applies to the entire judgment. Glazer concedes that the Revolving Fund rather than the CIF was the source of the payment but argues that the reduced rate does not apply to the portion of the judgment reimbursed by the State's excess insurer. Resolving this issue turns on the interpretation of § 41-622(F), and we review statutory interpretation issues de novo. *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 194 ¶ 6 (2016).

**¶9**        "We construe statutes to give effect to the legislature's intent." *State ex rel. DES v. Pandola*, 243 Ariz. 418, 419 ¶ 6 (2018) (internal quotation marks omitted). "The best indicator of that intent is the statute's plain language . . . and when that language is unambiguous, we apply it without resorting to secondary statutory interpretation principles." *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018).

**¶10**        But "plain language" interpretation does not focus on statutory words or phrases in isolation. Rather, as we recently stated:

> Words in statutes should be read in context in determining their meaning. In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia* . . . for guidance and to give effect to all of the provisions involved.

*Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017) (citation omitted); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

¶11        Section 41-622(F) specifies the rate at which interest accrues on judgments against the State during the pendency of an appeal. In relevant part, it provides:

> F. . . . Interest on any judgment against this state paid for out of the risk management revolving fund shall accrue at the average yield offered by United States treasury bills during the course of the appeal and shall be paid in accordance with this section. If the appeal is lost by this state, the judgment amount plus interest at the rate prescribed in this subsection shall be paid.

¶12        Both parties argue that § 41-622(F) is clear and unambiguous, but both contend the statutory context supports their respective positions. A statute is not ambiguous merely because the parties disagree about its meaning. Instead, it is ambiguous when it is open to multiple reasonable interpretations, *see Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325 ¶ 13 (2014), and when its meaning is not evident after examining the statute's text as a whole or considering statutes relating to the same subject or general purpose, *see State v. Gates*, 243 Ariz. 451, 453 ¶ 7 (2018). Applying this rule, we conclude that § 41-622 can be reasonably interpreted only in the manner urged by the State.

¶13        Section 41-622(F) provides a single requirement for the lower interest rate: the judgment must be "paid for out of the risk management revolving fund." The statute further provides that if the State loses an appeal, as it did here, "the judgment amount plus interest at the rate prescribed in this subsection shall be paid." *Id.* This subsection contains no exceptions, conditions, or qualifications regarding excess insurance that the State may purchase to cover liabilities exceeding the State's self-insured limit.

¶14        This construction of subsection (F) is supported by § 41-622(E), which provides that any monies the State recovers "pursuant to litigation . . . or otherwise, for damages relating to . . . a liability . . . for which monies from the risk management revolving fund . . . have been or will be paid shall be deposited in the [Revolving Fund]." This provision

suggests that the legislature recognized that the State may be reimbursed by insurance or other collateral sources for liability payments made from the Revolving Fund, and yet did not modify subsection (F) to limit its lower interest rate to self-insured payments for which the State would not be reimbursed.

¶15        By contrast, Glazer contends that this interpretation fails to account adequately for § 41-622(A), which describes the Revolving Fund:

> A risk management revolving fund and a construction insurance fund are established in the department of administration for the purchase of insurance, risk management services including loss prevention services, *payment of self-insured losses* . . . and administrative costs necessary to carry out risk management services . . . .

(emphasis added).  Glazer argues that the purposes of the Revolving Fund are limited to those listed.  Because subsection (A) does not list "payment of insured losses" as one of the Revolving Fund's purposes, Glazer maintains that, based on the overall statutory scheme, § 41-622(F) applies only to uninsured or self-insured losses.  She also notes that the title to § 41-622 refers to "self-insured losses" but not to "insured losses."

¶16        Glazer would interpret "self-insured loss[]" in subsection (A) to mean the loss, or portion thereof, that is paid with unreimbursed taxpayer dollars.  We decline to read the statute so narrowly.  No language in subsection (A) so limits the payments.  Indeed, in this statutory context, a "self-insured loss[]" appears to refer to any liability that A.R.S. § 41-621 allows the State to self-insure, whether that liability is fully covered by the State's self-insured retention or is partially reimbursed by the excess insurance that § 41-622(A) permits the State to purchase from the Revolving Fund.  As both parties agree, the entire judgment was a State obligation: Glazer has no relationship with, or claim against, the State's excess insurer.  The State did not have coverage for Glazer's claim, nor was the State's excess carrier obligated to pay Glazer.  The excess carrier, by the terms of its policy, was obligated to reimburse the State for only those claims the State paid.

**¶17** Glazer's interpretation of subsection (A) creates unnecessary conflict with the language of subsection (E), which expressly contemplates that payments come from the Revolving Fund even if they are later reimbursed. It is therefore unreasonable to limit the reference to "self-insured losses" in subsection (A) to unreimbursed payments. The lower interest rate applies to all judgments against the State that are paid out of the Revolving Fund, including the portions of those judgments that may be later reimbursed by the State's excess insurer.

**¶18** Finally, because the statute is unambiguous, we do not consider the interpretive value, if any, of the statute's title. *See* A.R.S. § 1-212 (providing that section headings are not "part of the law"); *State ex rel. Romley v. Hauser*, 209 Ariz. 539, 542–43 ¶ 16 (2005) (noting that statutory titles do not alter a statute's plain meaning).

**¶19** Even if the statute were ambiguous, however, its legislative history supports the State's position. *See Minjares v. State*, 223 Ariz. 54, 62–63 ¶¶ 39–41 (App. 2009) (discussing the history of § 41-622(F)). The current language of subsection (F) was adopted in 1993. *See* 1993 Ariz. Sess. Laws, ch. 71 § 3 (1st Reg. Sess.). Contemporaneous legislative records suggest that the revision was intended to apply to judgments against the State generally, regardless of whether they may be later reimbursed.

**¶20** The House bill summary stated:

> Currently, judgments against the state which are under appeal accrue interest at the legal rate of 10% until the case is resolved through the appeals process. HB 2106 instead requires that *the interest rate on any judgment against the State* accrue at the average yield offered by U.S. Treasury Bills during the period in which the judgment is under appeal.

*Minjares*, 223 Ariz. at 63 ¶ 40 (emphasis added) (quoting Summary for H.B. 2106 for H. Comms. on Gov't Operations & Banking & Ins. (Feb. 17, 1993)). Similarly, minutes from the Senate Committee on Government noted that H.B. 2106 "changes the interest rate *for judgments against the State* during the period in which the judgment is under appeal." *Minutes of S. Comm. on*

*Gov't*, 41st Leg., 1st Reg. Sess. (Mar. 18, 1993) (emphasis added).  Neither of these documents distinguishes the judgment amount within the State's self-insured retention from that covered by excess insurance.

¶21          The point of § 41-622(F) is to save the State money.  It does this both by slowing the rate at which the self-insured retention is depleted and by decreasing the cost of insurance premiums.  As the court of appeals acknowledged, a judgment for $7 million is subject to the lower rate, even though the interest accruing on that judgment will be later reimbursed by insurance.  *Glazer II*, 242 Ariz. at 395 ¶ 15.  Because of the lower rate, the insurance company will incur fewer costs.  Basic economics suggests that if the State is a less-costly client, its insurer may charge lower premiums.  To apply the lower rate only to portions of the judgment falling within the self-insured retention is at odds with the statute's goal of saving the State money.  Nothing in the statute's text or history suggests that the legislature intended such an incongruous result.

## CONCLUSION

¶22          We agree with the court of appeals that "the judgment against the State was paid . . . out of the Risk Management Revolving Fund."  *Glazer II*, 242 Ariz. at 395 ¶ 14.  But the court erred in determining that the portion of the judgment that exceeds the State's self-insured retention "does not qualify for the reduced rate."  *Id.* ¶ 16.  We therefore vacate paragraphs 2, 16, and 17 of the court of appeals' opinion, affirm the trial court's ruling, and remand the case to the trial court for calculation of interest in accordance with this opinion.